Benny ABRAMOV, Appellant,

v.

ROYAL DALLAS, INC., Appellee.

No. 18809.

Court of Civil Appeals of Texas, Dallas.

March 18, 1976.

Linda S. Aland, Watson, Davis, Strother & Methium, Dallas, for appellant.

John D. Crawford, Dallas, for appellee.

AKIN, Justice.

This is an appeal by defendant, Benny Abramov, from an order granting plaintiff, Royal Dallas, Inc., a temporary injunction against him enforcing a covenant not to compete and from a temporary mandatory injunction requiring defendant to deposit into the court's registry funds and property alleged to belong to plaintiff.

On a temporary injunction appeal the issue presented is whether the trial court abused its discretion in issuing or refusing the writ. *Transport Company of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *Electronic Data Systems Corp. v. Powell*, 524 S.W.2d 393, 395 (Tex.Civ.App.—Dallas 1975,

writ ref'd n. r. e.). Defendant contends that the trial court abused its discretion in enforcing the covenant not to compete because the covenant in the original contract between defendant and Royal Trading, Inc. was not assigned to plaintiff. Additionally, defendant urges an abuse of the court's discretion in granting the mandatory injunction because plaintiff has an adequate remedy at law for recompense in damages. We cannot agree with these contentions and, accordingly, affirm the order of the trial court.

### The Covenant Not To Compete

On August 15, 1970, defendant entered into a written contract creating a partnership with Hanan Benjamini, Y. Fouzailoff, Amnon Benjaminov, and Royal Trading, Inc. for the purpose of establishing a wholesale diamond distributing business. Benjamini, Fouzailoff and Benjaminov owned all of the shares in Royal Trading. Defendant was referred to as Part B of this contract and the others were designated as Part A. Profits and losses were to be shared with defendant receiving one-third, and Part A receiving two-thirds. Additionally, defendant drew $500 monthly. Defendant was to devote all of his time to the business, which was to be operated as a branch of and under the name of Royal Trading, Inc. Embodied in this agreement was a covenant by defendant not to compete with the company, Royal Trading, Inc., in Texas for a period of five years in the event the relationship was terminated or in the event of Royal Trading's dissolution. This agreement further provides that in the event that defendant engages in a business in violation of this covenant, the profits of such a business should be considered as income of the partnership. The contract was written in Hebrew and all parties involved were Israelis, who had, in varying degrees, difficulty with the use of the English language.

On November 12, 1973, a second agreement was executed·by the same parties to the original contract. This agreement, re-

ferred to by the parties as a "special protocol," was also written in Hebrew. It specifically referred to the "business beginning in August 1970" and provided that defendant's monthly draw was to be increased to $750; defendant was to "put more order in the bookkeeping system . . . for the welfare of the business; " and the name of the business previously conducted under the name of Royal Trading, Inc. was to be changed to Royal Dallas, Inc. Pursuant to this agreement Royal Dallas, Inc. was incorporated. The partnership continued as it had under the original agreement until 1975 when the defendant commenced a business, known as Ben-Gil Co., in competition with plaintiff. This business was operated out of plaintiff's office in Dallas. The trial court found that plaintiff, Royal Dallas, was the successor in interest of Royal Trading in the partnership, and, consequently, Royal Dallas had the right to enforce the covenant. We agree because we interpret the second agreement as nothing more than a modification and renewal of the original agreement.

■ Defendant argues, however, that because Royal Dallas was not mentioned in the 1970 agreement and because there had been no formal proceedings for corporation succession, plaintiff cannot assert the provisions of the 1970 agreement. We cannot agree because the evidence shows that Royal Trading was succeeded in interest in the partnership by Royal Dallas with defendant's consent. The signatory parties referred to as Part A in the contract of 1970 and the special protocol of 1973 were identical. Both corporations were wholly owned by the same Part A signatories in both agreements. The partnership business merely used first the name of Royal Trading, Inc., and then that of Royal Dallas, Inc. with defendant's express agreement.

During the hearing Mr. Benjaminov testified that the purpose of the special protocol was to transfer everything from Royal Trading to Royal Dallas. He further stated that the 1970 agreement was not ended but rather everything was going to be the same: "We just transfer." Furthermore, he stated that *all of the business* interest of Royal Trading was transferred to plaintiff. After the 1973 agreement, the parties to both agreements conducted themselves from the date of the special protocol in 1973 until the time of suit as though the original agreement was still in effect. These acts of the parties are the best evidence of what they intended by the special protocol of 1973. Although this 1973 agreement did not specifically assign the covenant not to compete from Royal Trading to plaintiff, we hold that the evidence presented is sufficient for the trial court to have concluded that plaintiff was a predecessor in interest of Royal Trading in the partnership and that the covenant was transferred with this interest to plaintiff. Consequently, plaintiff was entitled to enforce the covenant. We hold also that there was no need to expressly assign the covenant. Our holding is supported by *Wells v. Powers*, 354 S.W.2d 651 (Tex.Civ.App.—Dallas 1962, no writ) in which this court held that there need be no express assignment of a contract in order for a party to assert the provisions of the contract. In that case this court stated that "upon a subsequent sale of the business, such covenant will pass as incident of the business even though not expressly assigned." *Id.* at 654. Since there is identity of parties signatory to both contracts and since all that occurred here was a change of the name under which the partnership operated, our facts are even more compelling than in *Wells*.

To agree with defendant would permit a person to take advantage of a technicality to perpetrate an injustice on the real parties in interest. This is particularly true here since the transfer was actually made after defendant agreed to it in the 1973 special protocol, which specifically referred to the continuation of the partnership business established in 1970. To say that the parties intended that the covenant not to compete contained in the 1970 agreement was not to be carried forth into the 1973 agreement would be absurd. And, certainly the trial court was justified in concluding

that this was the intention of the parties at the time that the special protocol was executed in 1973. Consequently, we hold that the trial court did not abuse its discretion in granting the temporary injunction.

### Mandatory Injunction

Defendant's second contention is that the trial court abused its discretion in issuing the writ of mandatory injunction requiring the defendant to deposit into the registry of the court certain funds and personalty in his possession. Defendant argues that there is an abuse of discretion because plaintiff has an adequate remedy at law in damages. We cannot agree. The 1970 agreement recites that defendant had no assets. Moreover, at the hearing defendant stated that his current assets were $100,000 and his accounts payable were $167,000. He further testified that he could not return other goods in his possession and that there was no way that he could repay plaintiff without selling his inventory which apparently belonged to the partnership business. These statements by the defendant are ample to support the trial court's order maintaining the status quo and protecting any rights to the property that plaintiff may prove on trial of this cause on the merits. Indeed, this testimony of the defendant strongly suggests that had not the trial court acted by issuing its writ, plaintiff, if it prevails at trial on the merits, may indeed win an empty victory.

Affirmed.