MID–AMERICAN INDEMNITY
INSURANCE COMPANY,
Relator,

v.

The Honorable Jack R. KING,
Judge, Respondent.

No. 94–0356.

Supreme Court of Texas.

Argued Jan. 4, 1995.

Decided July 7, 1995.

Thomas S. Brandon, Tom L. Larimore, Fort Worth, Joseph C. Boggins, Austin, for relator.

Howard L. Close, Leanne Johnson, George Michael Jamail, Beaumont, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which HIGHTOWER, CORNYN, GAMMAGE and ENOCH, Justices, joined.

The Texas Insurance Code generally requires an unauthorized insurer to post a bond before filing a pleading in defense of a lawsuit. TEX.INS.CODE art. 1.36, § 11(a). We consider in this original proceeding whether Mid–American Indemnity Insurance Co., an unauthorized insurer, is exempt from this general requirement under an exception added to the statute in 1993. The trial court held that Mid–American did not fall within the exception, and struck its pleadings after the company failed to post a bond. We agree with the trial court's construction of the statute, and therefore deny Mid–American's request for mandamus relief.

## I.

To explain the context of this dispute, we begin with an overview of the relevant statutes.

The Texas Insurance Code has long recognized that citizens of this state enter into transactions with eligible surplus lines insurers "as a result of difficulty in obtaining coverage from licensed insurers." TEX. INS.CODE art. 1.14–2, § 1. Because these insurers are not subject to the same restrictions as licensed insurers, the Legislature has declared that such transactions are "a matter of public interest" and "a subject of concern," and that "it is necessary to provide for the regulation, taxation, supervision and control of such transactions and the practices and matters related thereto." *Id.* The Legislature has therefore adopted "reasonable and practical safeguards" to protect consumers. *Id.*

Among these safeguards are requirements concerning the financial security of surplus lines insurers. To be eligible to provide surplus lines insurance, an insurer must provide evidence to the State Board of Insurance that it meets strict capital and surplus requirements. *See* Tex.Ins. Code art. 1.14–2, § 8(b). An insurer may be exempt from these requirements if the Commissioner finds, after a public hearing, that the insurer meets certain other requirements. *See id.*, § 8(b), (c).

Another safeguard for the consumer concerns an unauthorized insurer's defense of a lawsuit. Before filing a pleading in defense of a suit, an unauthorized insurer must deposit cash, securities, or a bond "in an amount to be determined by the court sufficient to secure the payment of any final judgment that may be rendered" in the suit. Tex.Ins.Code art. 1.36, § 11(a)(1). The court may dispense with this requirement if the insurer establishes that it maintains in a state of the United States funds or securities that are "sufficient and available to satisfy any final judgment" that may be rendered in the suit. *Id.*

Both of these safeguards were affected by measures enacted by the Legislature in 1993. First, the Legislature increased the minimum capital and surplus requirements for surplus lines insurers to $15,000,000. Act of May 28, 1993, 73rd Leg., R.S., ch. 685, § 7.08, 1993 Tex.Gen.Laws 2559, 2614 (amending Tex.Ins.Code art. 1.14–2, § 8). This heightened requirement was evidently intended to ensure that an unlicensed carrier would have sufficient capital to cover any claims.

Second, the Legislature acted to clarify the distinction between ordinary unauthorized insurers and "eligible surplus lines insurers." Only the latter are permitted to issue surplus lines insurance. *See* Tex. Ins.Code art. 1.14–2, § 8. To make this distinction clear, the Legislature redefined a "surplus lines insurer" as "an unlicensed insurer *deemed eligible* pursuant to Section 8 of this Article [Article 1.14–2] in which an insurance coverage is placed or

may be placed under this Article." Tex. Ins.Code art. 1.14–2, § 2(b) (as amended by Act of May 27, 1993, 73rd Leg., R.S., ch. 999, § 9, 1993 Tex.Gen.Laws 4373, 4377) (emphasis added).

As indicated previously, surplus lines insurers must meet strict minimum capital and surplus requirements. For that reason, the 1993 legislation clarifying the definition of surplus lines insurers also included several provisions easing other restrictions on such insurers. In particular, surplus lines insurers would not be subject to the requirement of posting a bond or other security before filing a pleading in court. Section 11 of the Insurance Code, which imposes that requirement on unauthorized insurers generally, was amended to add the following exception:

> This section does not apply to surplus lines insurers which were deemed eligible surplus lines insurers pursuant to Article 1.14–2 of this code at the date applicable coverage was issued.

Tex.Ins.Code art. 1.36, § 11(d) (added by Act of May 27, 1993, § 23, 1993 Tex.Gen. Laws at 4381).

Section 11(d) does not, by itself, make clear whether it exempts all unauthorized insurers deemed eligible at the date coverage was issued, or whether it instead exempts only eligible surplus lines insurers who held that status at the date coverage was issued. These two alternative constructions of the statute give rise to the present dispute.

## II.

Mid–American Indemnity Insurance Co., a Cayman Islands corporation, issued insurance policies in Texas as an eligible surplus lines insurer from 1988 through the end of 1993. Lopez–Gloria Construction Services, Inc., purchased a comprehensive general liability policy from Mid–American prior to 1993. Lopez–Gloria was providing construction and concrete services as a subcontractor to Williams Brothers Construction Company, Inc., in connec-

tion with the construction of the Martin Luther King Parkway project in Beaumont. The policy also provided coverage for Williams Brothers as an additional insured.

One of the surveyors employed by Lopez–Gloria, Pat Joe Teal, sustained head injuries at the job site when he was struck by a backhoe. Teal sued Williams Brothers, who in turn brought a third-party action against Lopez–Gloria. Mid–American denied coverage and refused to defend either Williams Brothers or Lopez–Gloria. Williams Brothers settled the underlying suit with Teal for a sum in excess of $600,000, but reserved its claims against Lopez–Gloria for indemnity. In June of 1992, Williams Brothers initiated this suit against Mid–American.

In January of 1993, Williams Brothers filed a motion with the trial court asking that Mid–American be required to post a bond under the provisions of article 1.36, section 11 of the Insurance Code. At the hearing on Williams Brothers' motion, Mid–American argued that a bond was not necessary and introduced evidence of a trust agreement that Mid–American contended met the conditions contemplated by the statute. The trial court denied Williams Brothers' motion.

On September 1, 1993, the 1993 amendments to the Insurance Code took effect, increasing the minimal capital and surplus requirements for surplus lines insurers to $15,000,000. Mid–American applied for an exemption from these requirements. After a hearing before an administrative law judge, the Commissioner of Insurance determined that Mid–American's request should be denied. Consequently, Mid–American was no longer an eligible surplus lines insurer under the Insurance Code.

In light of these and other developments, Lopez–Gloria filed a motion with the trial court in March of 1994, asking that the trial court require a bond and strike Mid–American's pleadings if the bond was not posted. In support of this motion, Lopez–Gloria offered the record of the proceedings before the Commissioner of Insurance.

After a hearing, the trial court issued an order requiring Mid–American to post a bond in the amount of $1,000,000. The order further provided that if Mid–American did not post a bond by a certain date, its pleadings would be stricken. After Mid–American failed to post the bond, the trial court struck its pleadings and rendered a default judgment against it as to liability. The plaintiffs' damages, together with interest and attorney's fees, are still to be determined in a subsequent trial.

Mid–American now seeks mandamus relief from the trial court's rulings.

### III.

■ Mandamus will issue only to correct a clear abuse of discretion when the relator has no adequate remedy at law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). The application of a statute or rule involves a legal conclusion that is reviewed with only limited deference to the trial court. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992). Thus, an erroneous interpretation of article 1.36 would constitute a clear abuse of discretion. Further, there is no adequate remedy by appeal when a trial court issues orders, such as orders striking the pleadings and rendering default judgment, that have the effect of adjudicating a dispute, but are not immediately appealable. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 919–20 (Tex.1991). Because the trial court's rulings in this case are interlocutory, Mid–American has no adequate remedy by appeal, and mandamus relief is therefore appropriate.

■ We now turn to the question of whether the trial court properly construed the Insurance Code in refusing to exempt Mid–American from the bond requirement of article 1.36, section 11. Under the exception added in 1993, this requirement does not apply to "surplus lines insurers

which were deemed eligible surplus lines insurers pursuant to Article 1.14–2 of this code at the date applicable coverage was issued." TEX.INS.CODE art. 1.36, § 11(d). Mid–American argues that it falls within this exception because it undisputedly was an eligible surplus lines insurer at the date applicable coverage was issued.

We disagree. By its terms, the exception in section 11(d) applies only to *surplus lines insurers* who were deemed eligible at the date coverage was issued. Mid–American undisputedly is not a surplus lines insurer, as that term is presently defined. As noted above, the same 1993 legislation that created the exception in section 11(d) also defined a "surplus lines insurer" as "an unlicensed insurer deemed *eligible*" under article 1.14–2. TEX.INS.CODE art. 1.14–2, § 2(b) (emphasis added). The Legislature's intent to connect these two provisions is clear; the floor report on the bill explained that "*eligible* surplus lines insurers responding to legal actions should not have to post bond to ensure payment of any judgment or order." HOUSE RE-SEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 958, 73rd Leg., R.S. (1993) (emphasis added). Thus, under the plain terms of the statute, an insurer is exempt from the bond requirement only if it is an eligible surplus lines insurer both at the time the coverage is issued and at the time it seeks to defend against a suit.

Adopting Mid–American's construction of the statute would contravene the Legislature's intent in two important respects. First, as noted previously, the main purpose of the legislation at issue was to clarify the distinction between eligible surplus lines insurers and unauthorized insurers. *See* HOUSE COMM. ON INSURANCE, BILL ANALYSIS, Tex.H.B. 958, 73rd Leg., R.S. (1993).[1] Mid–American's position would require us to ignore this distinction; in effect, we would have to interpret the phrase "surplus lines insurer" in section 11(d) to mean "unauthorized insurer," in spite of the Legislature's deliberate adoption of a contrary definition in section 2(b) of article 1.14–2.[2]

Second, Mid–American's position would undermine the Legislature's efforts to protect Texas consumers from unauthorized insurers that lack adequate capital. As noted above, during the same session in which section 11(d) was added, the Legislature significantly increased the minimum capital and surplus requirements for surplus lines insurers. Act of May 28, 1993, 73rd Leg., R.S., ch. 685, § 7.08, 1993 Tex. Gen.Laws 2559, 2614 (amending TEX.INS. CODE art. 1.14–2, § 8). When the same session of the Legislature enacts two statutes dealing with the same subject matter, "it is presumed that they were actuated by the same policy and imbued with the same spirit; and accordingly, in ascertaining the legislative intent, they will be read together, each in light of the other, as though they were embraced in one Act or were supplemental to each other." *Garrett v. Mercantile Nat'l Bank*, 140 Tex. 394, 168 S.W.2d 636, 637 (1943). Adopting Mid–American's interpretation of section 11(d) would be directly contrary to the spirit of the heightened security requirements in article 1.14–2. Under Mid–American's view, there would be a real danger that an unlicensed carrier would not have sufficient capital at the time the policy was issued, it would neither have to post any bond in court nor maintain adequate reserves.

1. The Bill Analysis states the bill's purpose as follows: "C.S.H.B. 958 clarifies the distinction between unauthorized insurers and eligible surplus lines insurers and clarifies requirements for independently procured insurance."

2. The 1993 amendments revised the definition of "surplus lines insurer" as follows:

"Surplus lines insurer" means an *unlicensed* [unauthorized] insurer *deemed eligible pursuant to section 8 of this Article* in which an insurance coverage is placed or may be placed under this Article.
Act of May 27, 1993, 73rd Leg., R.S., ch. 999, § 9, 1993 Tex.Gen.Laws 4373, 4377 (amending TEX.INS.CODE art. 1.14–2, § 2(b)).

The dissenting opinion asserts that the Legislature could not have meant to limit the exemption to presently-eligible surplus lines insurers, because "[t]he additional requirement that the insurer was an 'eligible' surplus lines insurer at the time the coverage was issued adds little substance to the statute." *Infra* at 329. We disagree. If eligibility were not required at the beginning of the insurance relationship, the state would be encouraging ineligible insurers to issue policies and postpone meeting eligibility requirements. Section 11(d) avoids that situation by requiring eligibility both at the time a policy is issued and at the litigation stage.

The dissenting opinion also asserts that the exception in section 11(d) cannot be limited to presently-eligible surplus lines insurers because the same exception also appears in sections 7 and 8 of article 1.36. Those sections, like section 11, apply to "unauthorized persons or insurers." The dissenting opinion argues that the exception as we have construed it is "entirely unnecessary" in sections 7 and 8, because "[e]ligible surplus lines insurers are not 'unauthorized insurers.'" *Infra* at 330. Again, we disagree. The relevant legislative history makes plain that the term "unauthorized" refers to insurers who are unlicensed, not to those who are ineligible:

> When Article 1.14–2 was added to the Insurance Code in 1967, the term "unauthorized" was used to distinguish unlicensed insurers from licensed insurers. The parties involved understood that eligible surplus lines transactions are lawful transactions by carriers licensed in other states, while unauthorized transactions are unlawful transactions by unlicensed and ineligible parties.

HOUSE COMM. ON INSURANCE, BILL ANALYSIS, Tex.H.B. 958, 73rd Leg., R.S. (1993). Thus, the general term "unauthorized insurers" does include eligible surplus lines insurers, because by definition such insurers are unlicensed.

We conclude that the Legislature deliberately limited the exception in section 11(d) to "surplus lines insurers." Because Mid–American undisputedly is not a surplus lines insurer, as that term is presently defined, we hold that it is subject to the requirement of posting a bond.

Mid–American also argues that the trial court abused its discretion by failing to dispense with the requirement of posting a bond. This requirement, Mid–American notes, is not mandatory:

> [T]he court may in its discretion issue an order dispensing with the deposit or bond if the insurer makes a showing satisfactory to that court that it maintains in a state of the United States funds or securities, in trust or otherwise, that are sufficient and available to satisfy any final judgment that may be entered in the court action, suit, or proceeding.

TEX.INS.CODE art. 1.36, § 11(a)(1). Mid–American presented evidence to the trial court that it had established a trust fund that in early 1993 had a value in excess of $3.5 million. This fund, Mid–American argues, should have been considered sufficient to satisfy any judgment that might be entered in the suit.

The terms of the statute, however, plainly leave discretion with the trial court to decide whether to dispense with the requirement of the bond. The trial court in the present case was presented with the findings and conclusions of the Commissioner of Insurance, who recommended that Mid–American be denied an exemption from the capital and surplus requirements for an eligible surplus lines insurer. Under these circumstances, we conclude that the trial court did not abuse its discretion by failing to excuse Mid–American from the requirement of posting a bond.

## IV.

Mid–American also asserts that the statute at issue, article 1.36 of the Texas Insurance Code, violates the Texas and United States Constitutions. Both this Court and the United States Supreme Court

have "consistently recognized the right of the states to regulate the insurance industry in its operations affecting the public welfare." *State v. State Mut. Life Assurance Co. of Am.*, 163 Tex. 240, 353 S.W.2d 412, 416 (1962). Mid–American does not deny this, but it nonetheless argues that article 1.36 violates its constitutional rights in several respects. We consider each argument in turn.

■ Mid–American first argues that article 1.36 unreasonably restricts its access to the courts, and thus violates its rights of equal protection. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3. We disagree. Article 1.36 serves the compelling state interest of ensuring that Texas citizens will have some means of recourse against unauthorized insurers. Thus, like the statute upheld in *State Mutual*, article 1.36 represents "a reasonable exercise of the power of the state to protect the vital interests of its citizens." *State Mutual*, 353 S.W.2d at 419. *See generally Blake v. McClung*, 172 U.S. 239, 256, 19 S.Ct. 165, 172, 43 L.Ed. 432 (1898) (noting that State may require a non-resident to give a bond before suing in court, "although such bond be not required of a resident"); *Hawes v. Club Ecuestre El Comandante*, 535 F.2d 140, 144–45 (1st Cir.1976) (upholding requirement that non-domiciliary plaintiffs post security).

■ For similar reasons, article 1.36 is also consistent with the Open Courts provision of the Texas Constitution, TEX. CONST. art. 1, § 13. The statute does not impose the bond requirement blindly on all unauthorized insurers. An unauthorized insurer may be exempt from the minimum capital and surplus requirements for eligibility if the Commissioner of Insurance determines, after a public hearing, that an exemption is warranted, or that the insurer meets certain enumerated requirements. TEX.INS.CODE art. 1.14–2, § 8(c), (d). Even if the Commissioner does not make such a determination, the trial court may still dispense with the requirement of a bond upon a showing that the insurer maintains sufficient funds in the United States to satisfy a final judgment. TEX. INS.CODE art. 1.36, § 11(a)(1). Under these circumstances, we conclude that any infringement on Mid–American's right of access to the courts is outweighed by the State's interest in protecting policyholders. *Cf. R Communications, Inc. v. Sharp*, 875 S.W.2d 314, 317–18 (Tex.1994) (striking forfeiture provision on the ground that it served no state interest); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 450 (Tex.1993) (same); *Dillingham v. Putnam*, 109 Tex. 1, 14 S.W. 303 (1890) (striking supersedeas bond requirement imposed in all appeals prosecuted by receivers). *See also Castilleja v. Camero*, 414 S.W.2d 431, 433 (Tex.1967) (approving order requiring payment of disputed funds into registry of court, where fund was "in danger of being lost or depleted"); *Abramov v. Royal Dallas, Inc.*, 536 S.W.2d 388, 391 (Tex.Civ.App.—Dallas 1976, no writ) (approving similar order on the ground that without it, "plaintiff, if it prevails at trial on the merits, may indeed win an empty victory").

■ Mid–American also argues that article 1.36 violates its rights of due process, U.S. CONST. amend. 14, and due course of law, TEX. CONST. art 1, §§ 13, 19. Mid–American does not dispute, however, that it received notice and the full evidentiary hearing required by article 1.36. The provisions establishing this procedure were already in place at the time Mid–American issued a policy to Lopez–Gloria; the only significant change in the statute since that time was the 1993 addition of the exception in section 11(d). Given these circumstances, and the State's strong interest in protecting policyholders, we hold that article 1.36 does not violate Mid–American's right to due process or due course of law.

■ Finally, Mid–American argues that article 1.36 violates the separation of powers. *See* TEX. CONST. art. 2, § 1. Section 11 of article 1.36 vests a trial court with discretion to determine whether a bond should be required, and what the amount

of the bond should be. This discretion, Mid–American argues, places the trial court in a role that is more legislative than judicial. We disagree. Section 11 confers no more discretion on trial courts than they exercise in carrying out a number of other functions, such as setting court reporters' salaries. Texas courts have rejected arguments that the exercise of such discretion by trial courts necessarily violates the separation of powers. *See, e.g., Holloway v. Butler,* 828 S.W.2d 810, 811–12 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Pogue v. Duncan,* 770 S.W.2d 867 (Tex.App.—Tyler 1989, writ denied).

We hold, therefore, that the trial court's application of article 1.36, section 11 does not violate Mid–American's rights under any of the constitutional provisions Mid–American relies upon.

\*     \*     \*     \*     \*     \*

We conclude that the trial court did not abuse its discretion by requiring Mid–American to post a bond. Accordingly, the writ of mandamus is denied.

Dissenting opinion by OWEN, Justice, in which PHILLIPS, Chief Justice, GONZALES and HECHT, Justices, join.

I respectfully dissent. In this original proceeding, Mid–American Indemnity Insurance Company seeks to require the trial court to reinstate its pleadings. The trial court struck all of Mid–American's pleadings and entered default judgment when it failed to post a $1,000,000 bond pursuant to article 1.36 of the Insurance Code. Because I believe the statute as written does not apply to Mid–American, I would grant the writ of mandamus.

The issue in this case is whether an unauthorized insurer which was an "eligible" surplus lines insurer under former article 1.14–2, section 8 of the Insurance Code at the time it issued the applicable coverage is exempted under article 1.36, section 11(d) of the Insurance Code from

posting a bond before filing any pleading in a court action against it, even though the insurer no longer qualifies as an "eligible" insurer under the 1993 amendments to article 1.14–2.

### I

Article 1.36 of the Texas Insurance Code, modeled after the Uniform Unauthorized Insurance Process Act, was adopted by the Legislature in 1987.[1] Acts 1987, 70th Leg., ch. 46, § 2, 1987 Tex.Gen.Laws 79. Section 11(a) of article 1.36, which has never been amended, provides:

> Before an unauthorized person or insurer files or has filed any pleading in any court action, suit, or proceeding or in an administrative proceeding before the State Board of Insurance instituted against that person or insurer through service of process, notice, order, demand, or pleading under Section 7 or 8 of this article, that person must ... deposit with the clerk of the court ... cash or securities or a bond with good and sufficient sureties to be approved by the court in an amount to be determined by the court sufficient to secure the payment of any final judgment....

TEX.INS.CODE art. 1.36, § 11(a). In 1993, the Legislature added a new provision to section 11 of article 1.36 which is pivotal to the resolution of this case. Section 11(d) provides:

> This section [section 11] does not apply to surplus lines insurers which were deemed eligible surplus lines insurers pursuant to Article 1.14–2 of this code at the date applicable coverage was issued.

Acts 1993, 73rd Leg., R.S., ch. 999, § 23, 1993 Tex.Gen.Laws 4381 (codified at TEX. INS.CODE art. 1.36, § 11(d)).

It is undisputed that Mid–American was an "eligible" surplus lines insurer as of the date it issued the policy in question to Lopez–Gloria. Mid–American continued to be an eligible surplus lines insurer at

---

1. The Uniform Unauthorized Insurance Pro-     cess Act has been adopted in forty-one states.

least through November 9, 1993. (The February 1994 order of the Commissioner of Insurance includes a specific finding that Mid–American was an eligible surplus lines insurer as of November 9, 1993.) The Court concludes that section 11(d) does not exempt an unauthorized insurer who was an eligible surplus lines insurer at the time the coverage was issued, but was not an "eligible" insurer at the time the trial court considered the requirement of a bond.

No provision comparable to the exemption in section 11(d) appears in the Uniform Unauthorized Insurance Process Act. Accordingly, there is little guidance from that source or from other jurisdictions as to the proper construction of this subsection.

The search for the intent of the Texas Legislature begins with the definition of "surplus lines insurers" in the Insurance Code. That definition is found in article 1.14–2, section 2(b), and is as follows: " 'Surplus lines insurer' means an unlicensed insurer deemed eligible pursuant to Section 8 of this Article in which an insurance coverage is placed or may be placed under this article." TEX.INS.CODE art. 1.14–2, § 2(b). Section 8 of article 1.14–2 sets out the requirements which must be met in order for a surplus lines insurer to qualify as an eligible insurer and includes the requirement that the insurer have a minimum capital and surplus of $15,000,-000. TEX.INS.CODE art. 1.14–2, § 8(b).

Read literally, the definition of the term "surplus lines insurer" is synonymous with *"eligible* surplus lines insurer." The Court construes section 11(d) of article 1.36 in this manner, so that in essence the statute would say:

> This section does not apply to [eligible] surplus lines insurers which were also deemed eligible surplus lines insurers pursuant to Article 1.14–2 of this code at the date applicable coverage was issued.

The Court contends that the statute should be construed in this manner to give the broadest possible protection to Texas policyholders who have procured insurance from surplus lines insurers. At first blush, this is a compelling argument. I agree that the purpose of article 1.36 and other statutes regulating the insurance industry is to provide protection to the public and to insure a viable insurance industry. However, a recitation of these broad principles does not end the inquiry into the meaning of section 11(d). We must examine the specific language in the statute and apply well-settled principles of statutory construction.

The most troublesome aspect of the Court's approach is that its construction of the statute gives little meaning to the Legislature's specific use of "the date applicable coverage was issued." TEX.INS.CODE art. 1.36, § 11(d). The Legislature clearly chose the date of the issuance of the policy as a pertinent point in time. In construing a statute, we must strive to give meaning to *all* of its provisions. *Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987). If "surplus lines insurers" means "eligible surplus lines insurers" in section 11(d) of article 1.36, the Legislature could simply have limited the exemption to "surplus lines insurers" or to "eligible surplus lines insurers." The additional requirement that the insurer was an "eligible" surplus lines insurer at the time the coverage was issued adds little substance to the statute.

The meaning of section 11(d) of article 1.36 is unmistakable when section 1.36 is considered in its entirety. The provisions of the Insurance Code which are at issue address several different categories of insurers, including domestic insurers that have been approved to operate in this state, foreign and alien insurance companies, unauthorized insurers, and surplus lines insurers. *See, e.g.,* TEX.INS.CODE art. 1.36, § 3. There are different substantive provisions as well as procedural provisions applicable to each. Provisions which afford the fewest rights clearly apply to unauthorized insurers which have never become eligible to write insurance in this

state. The Court concludes that companies in the position of Mid–American, which were at one time eligible but who have been unable to meet the increased financial requirements, should be placed in the same category as wholly unauthorized insurers who have never met the eligibility requirements. The statute does not bear this out.

The critical provisions are in sections 3, 7, 8 and 11. Section 3 provides a procedure for obtaining service of process on virtually all insurers: domestic approved insurers, foreign and alien companies, unauthorized insurers (which the Court recognizes would include Mid–American), and surplus lines insurers (which does not include Mid–American because it is no longer an eligible surplus lines insurer). Sections 7 and 8 provide additional procedures for obtaining service of process, but only on "unauthorized insurers," through service on the commissioner of insurance in section 7 and on the secretary of state in section 8. *Neither section 7 or section 8 is applicable to eligible surplus lines insurers.* These sections only apply to *unauthorized insurers.* Eligible surplus lines insurers are not "unauthorized insurers." [2] *See* Tex.Ins.Code art. 1.14–2, § 2(b). Yet, the same language which is at issue in section 11(d) of article 1.36 also appears in sections 7 and 8 of that article. Each of these sections states:

> This section does not apply to surplus lines insurers which were deemed eligible surplus lines insurers pursuant to Article 1.14–2 of this code at the date the applicable coverage was issued.

*See* Tex.Ins.Code art. 1.36, §§ 7(c) and 8(b). *This language is entirely unnecessary if it means only eligible surplus lines insurers. They are not covered by either section 7 or 8 in any event.* The Legislature obviously intended to carve out from sections 7(c) and 8(b), *as well as 11(d),*

surplus lines insurers who were eligible at the time the policy was issued, but who could not meet the increased financial requirements.

In sections 7, 8, and 11 of article 1.36, the Legislature has drawn a distinction between surplus lines insurers who were eligible to write insurance in this state at the time the policy was issued and unauthorized insurers which never met the eligibility requirements at any point in time.

The Court concludes that if eligibility were not required at the time the policy issued *and* at the present, the state would be encouraging ineligible insurers to issue policies and to postpone meeting eligibility requirements. This reasoning does not withstand scrutiny. It is highly unlikely that imposing a bond requirement in litigation would offer any kind of "incentive" for companies to meet to the capital and surplus requirements. Either they have the financial wherewithal, or they do not. It is also doubtful that requiring a bond after litigation ensues over a policy provides any disincentive to a company who has already violated the law by writing unlawful coverage. A person or insurer who conducts unauthorized insurance business is subject to civil penalties of up to $10,000 for each violation and for each day of violation, and may be enjoined from continuing the violation or threat of violation. Tex.Ins.Code art. 1.14–1, §§ 3(d) & (e).

The Court infers that because Mid–American no longer meets the financial requirements under article 1.14–2 and therefore is no longer an eligible surplus lines insurer, that it must be teetering on the edge of insolvency, and that the bond or other security requirements in article 1.36 were viewed as necessary by the Legislature to protect policyholders. Such an inference does not automatically flow in light of the history of section 1.14–2 of the Insurance Code. Prior to 1987,

---

**2.** Under the amendments to the definition of "surplus lines insurer," an eligible surplus lines insurer is no longer an "unauthorized insurer," as it was under the former statute.

It is now an "unlicensed insurer" deemed eligible in which to place coverage. *See* Tex. Ins.Code art. 1.14–2, § 2(b).

there were general requirements set out in section 1.14–2 for "eligible" surplus lines insurers. In 1987, that section was amended, and for the first time, it included specific capital and surplus requirements which increased over time. Under the statute, the capital and surplus requirement for surplus lines insurers was $2,500,000 in 1987, gradually increasing over the years to $3,500,000, then $4,500,000, and up to $6,000,000 on and after December 31, 1992. The 1993 amendments implemented a further, very substantial increase to $15,000,000. The fact that Mid–American does not meet the $15,000,000 threshold does not mean that in the judgment of the Legislature, companies in its position border on insolvency and should be required to post a bond before they are permitted to defend themselves in the courts of this state.

The trial court abused its discretion in requiring Mid–American to post a bond and in imposing what amounted to a death penalty on Mid–American for its failure to do so. Mid–American is entitled to mandamus relief.