LEXINGTON INSURANCE COMPANY, Landmark Insurance Company, and American International Specialty Lines Insurance Company, Petitioners,

v.

Carole Keeton STRAYHORN, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Respondents.

No. 04–0429.

Supreme Court of Texas.

Argued Sept. 28, 2005.

Opinion Delivered Dec. 1, 2006.

Cynthia Hollingsworth, Curtis L. Frisbie Jr., Randy D. Gordon, Samuel Eugene Joyner Jr., Gardere Wynne Sewell LLP, Dallas, Jeremy C. Martin, Irving, Anthony Icenogle, Joseph C. Boggins, De Leon Boggins & Icenogle, Austin, Chester J. Makowski, Royston Rayzor Vickery & Williams, L.L.P., Houston, for Petitioners.

William E. Storie, Office of Atty. Gen. of Texas–Taxation, Greg Abbott, Atty. Gen. of Texas, Barry Ross McBee, Edward D. Burbach, Esteban H. Rodriguez, Office of Atty. Gen., Austin, for Respondents.

Craig T. Enoch, Alexander J. Gonzales, Alejandro Sin Valdes, David Fowler Johnson, Winstead Sechrest & Minick P.C., Austin, for Amicus Curiae, American Insurance Association.

Melvin L. Burner, Long Burner Parks & DeLargy, P.C., Austin, for Amicus Curiae, Scottsdale Insurance Company.

Alene Ross Levy, Haynes & Boone, L.L.P., Houston, for Amicus Curiae, Varco International, Inc.

John Smithee, Templeton Smithee Hayes Heinrich & Russell, L.L.P., Amarillo, for Amicus Curiae, John Smithee.

James W. Paulsen, Houston, for Amicus Curiae, Yorkshire Ins. Co., Ltd.

Justice BRISTER delivered the opinion of the Court.

The Comptroller[1] assessed almost $7 million in premium taxes against Lexington Insurance Company, Landmark Insurance Company, and American International Specialty Lines Insurance Company (collectively, "the insurers") for policies issued in the early 1990s.[2] After the insurers proved that most of their policies were procured through surplus lines agents licensed in Texas, the Comptroller dropped 70 percent of her claim,[3] recognizing that in such cases the agent rather than the carrier was liable for the taxes. But because the insurers could not prove the same as to the rest of their policies, they paid almost $2 million in premium taxes under protest and sought a refund.

We agree with the insurers that the Texas Insurance Code distinguishes between eligible surplus lines carriers and other unlicensed insurers, and often treats the two quite differently. But we agree with the Comptroller that when it comes to collecting premium taxes, the Code treats the two the same if a surplus policy is not placed through a licensed agent. Accordingly, we affirm the court of appeals' judgment remanding the case to the trial court.

## I

Texas law imposes a variety of taxes on insurance premiums.[4] Generally those taxes are imposed on and paid by insurers licensed to do business in Texas.[5] But premium taxes are assessed even if there is no licensed insurer (as with surplus lines policies) to prevent giving policies by unlicensed insurers an unfair advantage. Thus, the Insurance Code imposes a 4.85 percent premium tax on both unauthorized insurance and surplus lines policies.[6] Here, because Lexington was not authorized to issue insurance in Texas other than as an eligible surplus lines carrier, its policies were subject to the 4.85 percent tax.

1. Suit was filed against both the Comptroller of Public Accounts of the State of Texas, Carole Keeton Strayhorn, and the Attorney General of the State of Texas, Greg Abbott, but as their interests do not diverge, we refer to them jointly as the "Comptroller."

2. The Comptroller initially assessed taxes, interest and an additional penalty against Lexington, Landmark, and American International, in the amounts of $6,303,394.91, $171,300.83, and $362,975.97, respectively.

3. The taxes and penalties against Lexington, Landmark, and American International were reduced to $1,596,196.63, $36,174.92, $340,980.31, respectively.

4. See generally TEX. INS.CODE §§ 221–226.

5. See, e.g., id. § 221.002(a) (imposing 1.6 percent gross premiums tax on property and casualty insurers), § 222.003 (imposing up to 1.75 percent gross premiums tax on life, health, and accident insurers), § 223.003 (imposing 1.35 percent gross premiums tax on title insurers).

6. See id. §§ 226.003, 225.004 (formerly codified at TEX. INS. CODE art. 1.14–1, § 11(a) (repealed 1999), 1.14–2, § 12(a) (repealed 2003)). The Texas Insurance Code was recently recodified. When a cited provision has not materially changed from that in effect during the time relevant to this dispute, citation will be to the current Code with the former provision noted parenthetically.

This suit is about who should pay that tax. On policies issued by unauthorized insurers, the *insurer* must pay the tax, and the insured must pay it if the insurer does not.[7] By contrast, on surplus lines policies, the surplus lines *agent* must pay the tax after collecting it from the insureds;[8] insurers are not liable for the tax. Thus, we must decide whether these policies should be treated as surplus lines insurance (in which case the insurers are not liable) or unauthorized insurance (in which case they are).

The Insurance Code provides that only licensed agents may issue surplus lines policies,[9] and requires that such policies bear the agent's name and address.[10] In a 1998 audit of records for the years 1992–95, the Comptroller could not confirm whether licensed surplus lines agents placed many of the insurers' policies or paid taxes on them. Accordingly, the Comptroller treated the policies as unauthorized insurance and assessed the insurers almost $7 million in past-due premium taxes.

Although the insurers argued they had no statutory obligation to file or maintain records of those transactions, they nevertheless tried to gather information showing that their policies were in fact placed through licensed surplus lines agents, who either paid or should have paid the taxes. These efforts were largely successful, but because some agents were deceased, unavailable, uncooperative, or unhelpful, the insurers were unable to identify licensed agents who should have paid $1,973,352 in taxes. After administrative hearings and requests for redetermination, the insurers paid the taxes under protest and filed declaratory judgment actions seeking refunds of the taxes, interest, and additional penalties.

The insurers moved for summary judgment on the ground that eligible surplus lines insurers cannot be liable for these premium taxes, whether or not a licensed agent was used. The trial court granted their motions, but the Third Court of Appeals reversed and remanded for further proceedings.[11]

## II

## A

■ We begin with the premium tax on unauthorized insurance—the one the Comptroller seeks to collect. As in any case of statutory construction, we look first and foremost to the words of the statute.[12]

Throughout the tax years here, the Insurance Code required unauthorized insurers to pay a tax on premiums, with certain exceptions:

*Except as to premiums on insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer* as defined in Article 1.14–2 and premiums on independently procured insurance on which a tax has been paid pursuant to this Article or Article 1.14–2, *every unauthorized insurer shall pay* to the comptroller, on a form prescribed

---

**7.** *See id.* §§ 225.002–.003, 226.005(c) (formerly art. 1.14–1, § 11(a)).

**8.** *See id.* §§ 225.004, 225.006, 225.010 (formerly art. 1.14–2, § 12).

**9.** *See id.* § 981.020 (formerly art. 1.14–2, § 3).

**10.** *See id.* § 981.101(c) (formerly art. 1.14–2, § 7(a)).

**11.** *Strayhorn v. Lexington Ins. Co.,* 128 S.W.3d 772 (Tex.App.-Austin 2004).

**12.** *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 83 (Tex. 2004).

by the comptroller, before March 1 next succeeding the calendar year in which the insurance was so effectuated, continued or renewed or another date as prescribed by the comptroller a premium receipts tax of 4.85 percent of gross premiums charged for such insurance on subjects resident, located or to be performed in this state.[13]

While the full passage is somewhat cumbersome, the introductory exception is not—surplus lines premiums are carved out if two conditions are met: (1) the insurance is procured by a licensed surplus lines agent (2) from an eligible surplus lines insurer. The insurers' argument that eligible surplus lines carriers are always exempted from this tax would effectively remove the first of these conditions. As the statutory exception contains two conditions, we are not at liberty to disregard one of them.

The insurers' primary argument is that this provision requires only that "every unauthorized insurer" must pay the premium tax, a class it asserts does not include eligible surplus lines insurers. We disagree. First, the insurers' argument would render the introductory exception superfluous—if eligible surplus lines carriers can never be "unauthorized insurers,"

there would be no need for an exception carving them out. We must presume that the entire statute—including the introductory exception—was intended to be effective.[14]

Moreover, we concluded ten years ago in *Mid-American Indemnity Insurance Co. v. King* that "the general term 'unauthorized insurers' *does* include eligible surplus lines insurers."[15] Because "legislative history makes plain that the term 'unauthorized' refers to insurers who are unlicensed," we held that eligible surplus lines insurers would be included "because by definition [they] are unlicensed."[16] While we noted several distinctions between eligible surplus lines insurers and "ordinary unauthorized insurers,"[17] that holding constrains us from adopting the insurers' construction today.

The insurers point to the separate premium tax provision in the surplus lines statute (imposed on insureds and paid by agents), and argue that the specific statute applicable to surplus lines policies should prevail over the general statute applicable to all unauthorized carriers.[18] But that rule of construction applies only when overlapping statutes cannot be reconciled;[19] we believe these statutes can.

---

13. Tex.Ins.Code art. 1.14–1, § 11(a) (repealed 1999) (emphasis added). Before the 1993 amendment, the same section provided that "every unauthorized insurer" shall pay the premium tax "[e]xcept as to premiums on lawfully procured surplus lines insurance." *See* Act of Apr. 27, 1967, 60th Leg., R.S., ch. 185, § 1, 1967 Tex. Gen. Laws 400, 401–14, *amended by* Act of May 27, 1993, 73d Leg., R.S., ch. 999, § 6, 1993 Tex. Gen. Laws 4373, 4375, *repealed by* Act of Apr. 30, 1999, 76th Leg., R.S., ch 101, § 5, 1999 Tex. Gen. Laws 486, 538.

14. *See* Tex. Gov't Code § 311.021(1).

15. 22 S.W.3d 321, 326 (Tex.1995) (emphasis added).

16. *Id.*

17. *Id.* at 323.

18. *See* Tex. Gov't Code § 311.026(b) (providing that if a "conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision"); *Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex.2005).

19. *See* Tex. Gov't Code § 311.026(a) ("If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.").

Here, one statute imposes a tax on insureds for surplus lines premiums; the other imposes a tax on insurers for unauthorized premiums *except when procured by a licensed agent from an eligible surplus lines carrier.* Because a licensed agent and eligible carrier are prerequisites for *all* surplus lines policies,[20] these two statutes can be reconciled by applying the former when both conditions are met, and the latter when one or both conditions are not.

■ We have recognized that the Legislature has amended these statutes several times "to clarify the distinction between eligible surplus lines insurers and unauthorized insurers."[21] But that does not mean the Legislature intended to make the two categories mutually exclusive, or to exclude the former from treatment as the latter in all cases.[22] Accordingly, we agree with the Comptroller that the words of the unauthorized insurance statute appear to make its premium tax collectible from an

eligible surplus lines carrier if the policy was not procured through a licensed surplus agent.

## B

In construing these statutes, we may also consider the purposes of the Insurance Code.[23] Both the surplus lines and unauthorized insurance statutes include among their purposes "protecting the premium tax revenues of this state."[24] These and other purposes of these statutes would be frustrated if we were to treat all policies by eligible carriers as surplus lines, whether procured through a licensed agent or not.

The surplus lines statute relies heavily on licensed surplus lines agents. It is the agent who determines and certifies that coverage is unavailable from authorized insurers, thus justifying surplus lines placement.[25] An agent must make sure that a carrier meets eligibility requirements, and must make a reasonable effort

**20.** *See* TEX. INS.CODE §§ 981.002(3), 981.004(a) (formerly art. 1.14–2, § 3(a)).

**21.** *Mid–American Indem. Ins. Co. v. King,* 22 S.W.3d 321, 325 (Tex.1995). Beginning in 1951, the Insurance Code referred to both unauthorized and surplus lines carriers as "unauthorized insurers" and addressed them in one article. *See* Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 1085–89, *repealed by* Act of Apr. 27, 1967, 60th Leg., R.S., ch. 185, § 2, 1967 Tex. Gen. Laws 400, 408. In 1967, the two were separated into different articles of the Insurance Code, *See* Act of Apr. 27, 1967, 60th Leg., R.S., ch. 185, § 1, 1967 Tex. Gen. Laws 400, 401–14, *repealed by* Act of Apr. 30, 1999, 76th Leg., R.S., ch. 101, § 5, 1999 Tex. Gen. Laws 486, 538; Act of Apr. 27, 1967, 60th Leg., R.S., ch. 185, § 2, 1967 Tex. Gen. Laws 400, 409, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 31(b)(1), 2001 Tex. Gen. Laws 3658, 4208, but a surplus lines insurer was still defined as "an *unauthorized* insurer in which an insurance coverage is placed or may be placed under this Arti-

cle." TEX. INS.CODE art. 1.14–2, § 2(b)(as added by Act of Apr. 27, 1967, 60th Leg., R.S., ch. 185, § 2, 1967 Tex. Gen. Laws 400, 409)(repealed 2001)(emphasis added). In 1993, the Legislature changed "unauthorized insurer" in this definition to "unlicensed insurer." TEX. INS.CODE art. 1.14–2, § 2(b)(as added by Act of 1993, 73rd Leg., R.S., ch. 999, § 9, 1993 Tex. Gen. Laws 4373, 4377) (repealed 2001).

**22.** *See Mid–American,* 22 S.W.3d at 326.

**23.** *See* TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the: (1) object sought to be attained . . ."); *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 84 (Tex.2004).

**24.** TEX. INS.CODE §§ 101.001(b), 981.001(b) (formerly art. 1.14–1, § 1, art. 1.14–2, § 1).

**25.** *See id.* § 981.216 (formerly art. 1.14–2, §§ 5, 6).

to ascertain the carrier's soundness.[26] It is the agent's duty to issue and deliver the policy, file it with the State, and notify insureds of any material changes.[27] The agent keeps a record of all transactions, and makes an annual report to the State.[28] Indeed, the State's effort to protect the public interest in this area is almost entirely dependent on monitoring licensed surplus lines agents.[29]

The surplus lines premium tax is similarly dependent on the involvement of a licensed agent. Agents must compute the premium taxes (by allocating premiums to Texas risks), collect them from insureds, hold them in trust, and report and render them to the State.[30] Agents are guilty of theft if the taxes are not timely paid.[31] If (as the insurers argue) the tax cannot be collected from eligible insurers when no licensed agent participated, it is hard to see how it will be collected at all.

█ This cannot simply be written off as a procedural defect in the Insurance Code. Because insurance regulation and taxation is generally a state rather than federal matter,[32] states have long tried to make sure that insurers are not only reliable but reachable—that local agents and records exist so that local regulations and taxes can be enforced.[33] By definition,

surplus lines insurers are not located in Texas, and have not applied for permission to do business here. By requiring that surplus lines insurance must be placed through a licensed Texas surplus lines agent,[34] the Code prescribes a condition vital to the State's regulatory jurisdiction.

When policies are procured through *both* a licensed agent and an eligible surplus lines carrier, state policy is fulfilled by requiring the agent to collect the tax and pay the State. When policies are procured through *neither* a licensed agent nor an eligible carrier, the policy is met by requiring the insurer to pay the tax. But when a policy is procured through an eligible carrier *but not* through a licensed agent, exempting the insurer may result in *no one* paying the tax—indeed, the State may never even know the policy was written. Adopting the insurers' interpretation would leave a hole in the State's insurance regulation and taxation plan.

### C

Finally, in construing statutes we may also consider the consequences of a particular construction.[35] Here, the insurers and several amici argue that treating surplus lines policies as unauthorized insurance will unfairly punish insurers for

---

26. *See id.* § 981.211 (formerly art. 1.14–2, § 8(a)-(b)).

27. *See id.* §§ 981.103–.105, 981.213, & 981.216 (formerly art. 1.14–2, § 6(b), (c), & (e)).

28. *See id.* §§ 981.215, 981.216 (formerly art. 1.14–2, §§ 15, 16).

29. *See id.* § 981.004 (formerly art. 1.14–2, § 3(a)).

30. *See id.* §§ 225.006–.010 (formerly art. 1.14–2, § 12(a)-(b)).

31. *See id.* § 225.013 (formerly art. 1.14–2, § 12(b)).

32. *See* 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.").

33. *See, e.g., Paul v. Virginia,* 75 U.S. (8 Wall) 168, 170, 19 L.Ed. 357 (1868) (holding constitutional a state statute prohibiting out-of-state insurers from issuing in-state policies without obtaining a license and posting bond).

34. *See* Tex. Ins.Code § 981.001(c) (formerly art. 1.14–2, § 3(a)(1), (3)).

35. *See* Tex. Gov't Code § 311.023(5).

omissions by third parties, and impose penalties that could destroy an important part of the Texas insurance market.

We recognize that whether a surplus lines policy complies with the Code is largely out of a surplus carrier's hands. Surplus lines policies are initiated by insureds or local agents when they cannot procure coverage from Texas-licensed insurers. Agents are responsible for getting their own licenses, as well as properly placing, reporting, and keeping records of all transactions.[36] Agents are responsible for paying the premium tax after collecting it from insureds.[37] As a result, surplus lines carriers often will not know whether insurance was available from a licensed insurer, whether the policy was properly reported, whether proper records were kept, or whether the premium tax was paid.

We also recognize that the consequences of treating a policy as unauthorized insurance can be severe. Anyone who assists in procuring unauthorized insurance is individually liable for unpaid claims under the policy.[38] Violations of the surplus lines statute may result in administrative penalties up to $25,000,[39] but violations of the unauthorized insurance statute are punishable by felony conviction and fines up to $10,000 *per day*.[40] An unauthorized insurer cannot enforce its policies,[41] while an eligible surplus line carrier may do so except in cases of a material and intentional

Code violations.[42] Unauthorized insurers cannot even defend themselves in Texas without filing a bond, while eligible surplus lines insurers can.[43]

But we do not agree that these difficult fair notice, due process, and business impact problems are implicated by our decision today. For tax purposes, eligible surplus lines carriers that fail to use a licensed agent are treated like unauthorized insurers only because of the two explicit conditions in the unauthorized insurance premium tax statute.[44] A similar exception with the same conditions does not appear in most other parts of the unauthorized insurance statute, including the separate penalty provisions that punish violations of each statute. Without any indication from the Legislature that any particular violations of the surplus lines statute would make the unauthorized insurance penalties apply, it is hard to see why violations of each statute would not be limited to the separate penalties that each prescribes.

■ Additionally, our holding today is limited to the two conditions stated in the particular exception before us (i.e., eligible carrier and licensed agent). As this provision states that it applies except when those two conditions are met, it clearly does *not* apply if they are. While many other violations of the surplus lines statute might occur beyond an eligible carriers' knowledge or control, the only two it must

---

36. *See* Tex. Ins.Code §§ 981.103–.105, 981.202–.203, 981.211, 981.213, & 981.216 (formerly art. 1.14–2, §§ 4, 5, 6(c), 7, 8, 12, 15, 15A, & 16).

37. *See id.* §§ 225.006–.010 (formerly art. 1.14–2, § 12).

38. *See id.* § 101.201 (formerly art. 1.14–2, § 8).

39. *See id.* §§ 981.006, 82.052, & 84.021–.022 (formerly art. 1.14–2, § 17).

40. *See id.* §§ 101.105, 101.106 (formerly art. 1.14–1, §§ 3(d) & 13).

41. *See id.* § 101.201 (formerly art. 1.14–1, § 8).

42. *See id.* § 981.005 (formerly art. 1.14–2, § 9(a)).

43. *See id.* §§ 101.352–.354 (formerly art. 1.36, § 11(a), (d)).

44. *See id.* former art. 1.14–1, § 11(a).

confirm to avoid the unauthorized insurance premium tax are its own eligibility and issuance through a licensed agent.[45]

Finally, we note that the Legislature amended the Insurance Code in 2003 to make clear that eligible surplus lines carriers must pay the 4.85 percent premium tax on unauthorized insurers unless an agent paid the tax.[46] The parties of course disagree whether this was a clarification or change in the Code.[47] But in either event, we must reject the argument that the Legislature could never have intended the Insurance Code to mean what the Comptroller says it does,[48] because the Legislature has now made clear that this is precisely its current intent.

\* \* \*

Accordingly, we agree with the Comptroller that if a policy is procured from an eligible surplus lines carrier without a licensed surplus lines agent, the premium tax applicable to unauthorized insurance policies may be collected from the insurer. We affirm the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

Chief Justice JEFFERSON did not participate in the decision.

---

**45.** Licensed surplus lines agents may accept applications from other agents and share commissions with them. *See id.* § 981.212 (formerly art. 1.14–2, § 14).

**46.** *See id.* § 226.003 (assessing tax on premiums of all insurers—authorized, unauthorized, and eligible surplus lines—and then excluding premiums on insurance procured from authorized insurers and from eligible surplus lines insurers through a licensed agent).

**47.** *See, e.g., In re C.O.S.,* 988 S.W.2d 760, 764 (Tex.1999) (holding that legislature's intent merely to clarify rather than change existing law does not mean original legislature had the same understanding).

**48.** *Cf. Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 135 (Tex.1994) (Hecht, J., concurring) ("The real principle at work here is this: in some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended.")