**ASSICURAZIONI GENERALI,
SpA, Plaintiff,**

v.

**PIPE LINE VALVE SPECIALTIES CO.,
INC., Staffcom, Inc., Eric Kinnison and
Debra Kinnison, Defendants.**

**Civil Action No. H–94–0505.**

United States District Court,
S.D. Texas,
Houston Division.

March 21, 1996.

James Michael Bettis, Jr., Harrison and Bettis, Houston, TX, for Assicurazioni Generali SpA.

Lennon C. Wright, Houston, TX, for Pipe Line Valve Specialities Company Inc.

Hugh James Howerton, Houston, TX, Lennon C. Wright, Houston, TX, for Staffcom Inc., Eric Kennison and Debra Kennison.

Pamela McGraw, Austin, TX, for Texas Workers' Compensation Insurance Facility.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiff Assicurazioni Generali SpA ("Plaintiff" or "Generali") moves for summary judgment [Doc. # 88] ("Plaintiff's Motion") and Defendants Pipeline Valve Specialties Company, Inc. ("Pipeline"), Staffcom, Inc. ("Staffcom"), Eric Kinnison ("Kinnison") and Debra Kinnison have filed a Motion for Summary Judgment [Doc. # 89] ("Defendants' Motion"). The Court GRANTS Plaintiff's Motion and DENIES Defendants' Motion.[1]

### I. THE PENDING MOTIONS

Plaintiff moves for a judicial declaration that a policy of general liability insurance (the "Policy") that it issued to Pipeline does not provide coverage for claims asserted by Eric Kinnison ("Kinnison") and Debra Kinnison against Pipeline because (1) Kinnison was an employee of Pipeline, a "dual employee" of Pipeline and Staffcom, or a "bor-

---

**1.** This decision supersedes the Court's tentative ruling at the Pretrial Conference held on December 20, 1995 that there were genuine questions of material fact as to the supervisor issue. Further detailed review of the record has convinced the Court that the concerns expressed at that time were unfounded. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990).

rowed" employee, thus entitling Plaintiff to rely on the Policy exclusion applicable to "employees"; (2) Pipeline failed to comply with the notice conditions of the Policy, thereby voiding coverage, if it existed at all; and (3) Pipeline failed to comply with the cooperation condition of the policy, thereby voiding coverage. *See* Plaintiff's Motion, at 3–15.

Defendants seek summary judgment contending that they are entitled to "judgment as a matter of law on all of Plaintiff's claims and causes of action." Defendants argue (1) that Kinnison was an employee of Staffcom since he worked pursuant to a contract that so stated, and that the Policy exclusion is therefore inapplicable; (2) that Texas law requires that all carriers, even surplus lines carriers, must show prejudice before they may rely on a "late notice" defense to coverage under the policy; (3) that the "no action" and "actual trial" provisions of insurance policies cannot be relied upon when coverage was wrongfully denied; (4) that Plaintiff may not attack the reasonableness of the Compromise Settlement Agreement and Final Agreed Judgment entered into between Kinnison and Pipeline; (5) that alternatively, the settlement was reasonable; and (6) that the Compromise Settlement Agreement and the Agreed Judgment and Covenant Not to Execute do not relieve Plaintiff from its obligation to provide coverage, as well as the duty to pay the judgment. *See* Defendants' Motion, at 3–4.

## II.  *FACTUAL BACKGROUND*

The parties all agree that this is an insurance coverage dispute relating to claims made by Kinnison as a result of injuries he claims that he sustained while working at Pipeline's facilities on October 22, 1991. At the time of the alleged accident, Kinnison was a machinist, who apparently worked pursuant to an employment contract with Staff-

com by which he was leased to Pipeline to perform work at Pipeline. *See* Defendants' Motion, at 2, 4, and Exh. 1 (Client Service Agreement between Pipeline and Staffcom) thereto.[2]

Plaintiff provided general liability insurance to Pipeline pursuant to a contract effective from November 19, 1990 through November 19, 1991. *See* Plaintiff's Motion, Exh.J.  Under the Policy, there is an exclusion that states that the insurance does not cover "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury." *Id.*, at Bates-stamped page 18.

Pipeline signed a Client Service Agreement with Staffcom pursuant to which Staffcom leased employees to Pipeline. *See* Exh. 1 to Defendants' Motion, at § I.  Staffcom provided Pipeline with payroll, health insurance, and employee benefits services, and provided the employees with workers' compensation insurance. *Id.*  Pipeline retained responsibility for compliance with job performance related laws.[3]

On February 21, 1991, pursuant to the Client Service Agreement, Pipeline transferred *all* of its hourly employees to Staffcom which, in turn, leased those employees, including Kinnison, back to Pipeline. *See* Defendants' Motion, Exh. 2, at 1; Plaintiff's Motion, Exh. A (Deposition of Jimmy Ray, Vice–President of Pipeline ("Ray")), at 2. Only Pipeline's three owners, who worked at the facility, remained Pipeline employees on the company's books. *See* Plaintiff's Motion, Exh. F, at 37–28; Defendants' Motion, Exh. 2, at 1.

Kinnison, as a leased employee from Staffcom, was assigned solely to Pipeline.  He never did any work at any other location.  After the lease arrangement was implemented, Kinnison received his paycheck and bene-

---

2.  The specific contract for employment between Kinnison and Staffcom is not in the record, and Kinnison does not recall signing one.  Plaintiff's Motion, Exh. F (Kinnison's Statement), at 9–10, 12.

3.  These included Occupational Safety and Health Administration ("OSHA") regulations, Environ-

mental Protection Agency regulations, the Fair Labor Standards Act, the Worker Adjustment and Retraining Notification Act, compliance with "any professional licensing requirements," and assignment and ownership of all intellectual property rights to inventions.  *See* Defendants' Motion, Exh. 1, at § 3.3.

fits from Staffcom.[4] *See* Plaintiff's Motion, Exh. F (Sworn Statement of Eric Kinnison, taken Dec. 16, 1991), at 2.

Jimmy Ray, Pipeline's Vice President, testified in connection with an investigation in 1991 of Kinnison's employment status [5] that the supervisory personnel of Pipeline who gave direction to Kinnison on a daily basis were transferred to Staffcom (Plaintiff's Motion, Exh. E, at 9), but that Ray and Pipeline retained decision making authority as to:

1. setting hours of employment;
2. hiring new employees, and
3. firing employees.

*Id.* at 9–10.

Plaintiff contends generally that Kinnison was Pipeline's employee or, at a minimum, that he was a "dual employee" of Pipeline and Staffcom.

Defendant contends that, according to the Client Service Agreement between Pipeline and Staffcom, Kinnison was an employee of Staffcom, not Pipeline, and, therefore, Kinnison is not subject to the Policy's "employee" exclusion.

As to the "notice" issue, Plaintiff contends that Pipeline became aware of the accident on or about November 14, 1991. *See* Plaintiff's Motion, Exh. A, at 2; Defendants' Motion, Exh. 2, at 2. At the very latest, Pipeline received notice of the accident sometime during the month of November 1991, either when Kinnison told a foreman, who told Ray (*see* Plaintiff's Motion, Exh. A (Ray Deposition), at 21–22) or after Ray "laid off" Kinnison on or about November 19, 1991, and Ray was informed by a Staffcom employee, Tammy Taylor ("Taylor"), by phone. *See* Defendants' Motion, Exh. 2, at 2.[6] During the conversation, Taylor informed Ray that a claim had been filed by Kinnison. *See* Plain-

tiff's Motion, Exh. A, at 28. Pipeline did not notify Plaintiff, although Kinnison had apparently filed a workers' compensation claim. *Id.*, Exh. A, at 29.

Pipeline was served with a petition in a lawsuit by the Kinnisons on January 20, 1993. *See* Plaintiff's Motion, Exh. H. Pipeline notified Plaintiff of the accident and lawsuit on March 22, 1993. *See* Plaintiff's Motion, Exh. I (Affidavit of Lawrence J. Winters). On May 7, 1993, Plaintiff issued a reservation of rights letter to Pipeline and offered to provide Pipeline with a defense of the Kinnison's lawsuit. *See* Plaintiff's Motion, at 3. Pipeline initially accepted the defense but, approximately one year later, on the eve of trial, reversed its position, rejected the defense, and entered into an Agreed Judgment granting recovery to the Kinnisons for $1,000,000 against Pipeline. The parties to the state court action also entered into a Covenant Not to Execute on the judgment. *See* Defendants' Motion, Exhibit 7 (Judgment; Compromise Settlement Agreement, ¶ 3). The Kinnisons and Pipeline agreed to split any recovery on Pipeline's claims against Generali 85% and 15%, respectively.

The present declaratory judgment action was filed on February 16, 1994.[7]

## III. *LEGAL ANALYSIS*

### A. *Summary Judgment Standard*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

4. He expressed some doubt about this matter when initially asked in the course of the litigation surrounding his injury, since there was no other change in his employment conditions or terms.

5. Apparently, Plaintiff had no involvement or knowledge of this investigation.

6. It appears that Ray disputed that Kinnison was injured on the job, since Ray received no report of an accident for approximately a week. Ray stated to an attorney for Employers Insurance Company that Kinnison originally had called in

sick, stating his back was injured when his son jumped on it. Defendants' Motion, Exh. 2 (Letter, R. Matthews to H. Bray, Dec. 19, 1991) at 1–2. *See* Plaintiff's Motion, Exh. A (Ray Deposition), at 29.

7. Plaintiff strenuously contests Kinnison's damages, contending that they are not as severe as Kinnison claims and are not attributable to this accident. The Court does not need to address these issues.

as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995).

■ The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir.1995). For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Id.* at 718–19; *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.), *reh'g en banc granted*, 70 F.3d 335 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

■ The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass*, 65 F.3d at 459; *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *McCallum Highlands*, 66 F.3d at 92; *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## B. *Kinnison's Employer and the Policy's Employee–Exclusion Clause*

Under the express terms of the Client Service Contract between Pipeline and Staffcom, Kinnison is an employee of Staffcom. *See* Defendant's Motion, Exh. 1. Plaintiff argues, however, that Kinnison's employment with Staffcom was a "sham" and that he was employed by Staffcom "on paper" only. Plaintiff contends that Kinnison, in fact, was an employee of Pipeline who worked exclusively for Pipeline, and that Staffcom handled only the payroll, insurance, and benefits for Pipeline's employees. Plaintiff further contends that Kinnison's work was controlled in every relevant aspect by Pipeline and, therefore, under Plaintiff's Policy, Kinnison's claim against Pipeline is excluded from coverage. Plaintiff also urges that, at the very least, Kinnison was a "dual employee" of both Pipeline and Staffcom under the Client Service Agreement.

Alternatively, Plaintiff contends that Kinnison was a "borrowed employee" of Staffcom at the time of the accident. Plaintiff argues that employer status is afforded to the party that has the right of control over the manner and details of the employee's work at the time of the employee's injury—in this case, Pipeline. Plaintiff cites various Texas cases in support of its arguments, including *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex.1992), *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex.1977), and *Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 195–96 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ Most importantly to the case before this Court, the Texas Supreme Court has held that "a contract will not prevent the existence of a master-servant relationship where the contract is 'a mere sham or cloak

designed to conceal the true legal relationship between the parties.' " *Exxon,* 842 S.W.2d at 630, *citing Newspapers, Inc. v. Love,* 380 S.W.2d 582, 590 (Tex.1964). *See also Swift v. Aetna Casualty & Sur. Co.,* 449 S.W.2d 818, 821 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); *Highlands Underwriters Ins. Co. v. Martinez,* 441 S.W.2d 666, 667–68 (Tex.Civ.App.—Waco 1969, writ ref'd n.r.e.) (same).

■ These cases make clear that a "general employee of one employer may, in a particular situation, become the borrowed servant of another employer [and that this determination] is often a difficult question." *Exxon,* 842 S.W.2d at 630, *citing Producers Chem. Co. v. McKay,* 366 S.W.2d 220, 225 (Tex. 1963). The critical consideration is which employer had the "right to control the details of the work." *Dodd v. Twin City Fire Ins. Co.,* 545 S.W.2d 766, 768 (Tex.1977). The existence of a contract purporting to designate the "right of control over certain employees is a factor to be considered, but is not controlling." *Exxon,* 842 S.W.2d at 630.

When the contract between employers is only implied or contains no provision for the right of control, courts consider the following factors in determining whether the general employees of one employer have become the borrowed employees of another employer:

(a) the nature of the general project;

(b) the nature of the work to be performed by the machinery and employees furnished;

(c) the length of the special employment;

(d) the type of machinery furnished;

(e) the acts representing an exercise of actual control; and

(f) the right to substitute another operator of the machine or tools provided.

*McKay,* 366 S.W.2d at 226.[8]

Defendants do not attempt to distinguish Plaintiff's authorities on this "employer" issue except to argue—without citation—that Plaintiff must prove that Pipeline had workers' compensation coverage, which is a necessary prerequisite to asserting the "borrowed servant" defense.

Defendants seem to agree that the party with the "right to control" employees at the time of the injury is the "employer." *See Pederson v. Apple Corrugated Packaging, Inc.,* 874 S.W.2d 135, 137 (Tex.App.—Eastland 1994, writ denied), *citing Archem Co. v. Austin Indus., Inc.,* 804 S.W.2d 268 (Tex. App.—Houston [1st Dist.] 1991, no writ). However, notwithstanding the foregoing authorities, Defendants argue that, under Texas law, "where there is a contract between the general and special employer which resolves the question of the employment status, then the factual consideration of the right to control the details of the work is unnecessary." *Sanchez v. Leggett,* 463 S.W.2d 517, 520 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.).

■ Defendants' response does not raise a genuine question of material fact. The only evidence that Defendants proffer is that (1) Kinnison's employer, according to his employment contract, was with Staffcom; (2) his immediate supervisor, who directed his work—at least on paper—were Staffcom employees; and (3) after the accident, the workers' compensation carrier obtained a legal opinion that Kinnison, in the writer's view, was a Staffcom employee. *See, e.g.,* Defendants' Motion, Exh. 2 (Letter, R. Matthews, Esq. to H. Bray, Dec. 19, 1991).[9]

The summary judgment record establishes, at the very least, that Kinnison was a "dual employee" of both Staffcom and Pipeline, or worked for Pipeline as a "borrowed employee" of Staffcom. Kinnison was hired on May 8, 1990 by Pipeline. *See* Plaintiff's Motion, Exh. A (Ray Deposition), at 2. After the February 21, 1991 transfer of all Pipeline employees to Staffcom, Pipeline leased back all the same employees. With no interrup-

---

**8.** In determining whether employee status has been established, federal courts apply the "economic realities" test. S. Childress & M. Davis, *Federal Standards of Review* § 2.27, at 2–207 (2d ed. 1992). This test looks to indicia of control and dependency, and the economic benefit of the relationship to the parties. *Id.* at 2–208.

**9.** Defendants submit no evidence on the first of these two points and Plaintiff does not contest them.

tion, each continued to perform his or her previous job on Pipeline's premises and each maintained the same job title. *See* Plaintiff's Motion, at 5, and Exh. F (Kinnison's Sworn Statement), at 10–12. Kinnison in 1991 did not know who his employer was, *see* Defendants' Motion, Exh. 2, at 2, and did not recall signing any employment agreement with Staffcom (Plaintiff's Motion, Exh. F (Kinnison Statement), at 9–10, 12). Kinnison was assigned solely to Pipeline and did only Pipeline's work. The *only* difference in his job after the Client Service Agreement was implemented was that his paychecks were issued by Staffcom instead of Pipeline, *id.*, although the checks were handed out by the supervisors at Pipeline's facilities. *Id.* at 33. Kinnison never met or talked to anyone from Staffcom other than the other leased-back, former Pipeline employees. *Id.*

As late as April 1993, Pipeline believed Kinnison was its employee, as evidenced by Pipeline's Answers to Plaintiff's First Set of Interrogatories in the state court action, *Kinnison v. Pipe Line Valve Specialties Co., Inc. and Staffcom, Inc.,* No. 93–01199 (152nd Dist. Ct., Harris County, Tex. July 28, 1994). Plaintiff's Motion, Exh. K. Pipeline, in response to Interrogatory No. 7(c), asking "[t]he amount of money you paid him weekly, monthly and hourly," responded "$390.00; $1,560.00; $9.75," without any objection to a question about whom Pipeline paid. Pipeline, in response to Interrogatory No. 7(g), which asked about "[t]he entity who had the right to direct the details of the work performed by Eric Kinnison on the date of his accident made the basis of this lawsuit," answered:

> Defendant contests that an accident occurred as alleged. Subject to this clarification, *Pipeline Valve Specialty, Inc. had the right to direct the details of the work on the date of the alleged accident.*

*Id.* Even in May, 1994, the settling parties acknowledged their beliefs that Pipeline controlled the workplace. In the Compromise Settlement Agreement, Kinnison and Pipeline stated:

> THIS AGREEMENT is by and between Eric and Debra Kinnison (the "Plaintiffs") and Pipe Line Valve Specialties Company, Inc. herein after referred to as Defendant.
>
> WHEREAS on or about the 22nd day of October, 1991, the date of the accident, Defendant operated Pipe Line [sic] Valve Specialties Company, Inc. in South Houston, Harris County, Texas. On that day, Plaintiff has alleged that Defendant was negligent and/or grossly negligent in the following:
>
> 1. Failing to provide a safe place, safe conditions for the Plaintiff, an employee of **Staffcom, Inc.,** to work;
> 2. Requiring the Plaintiff to climb on a machine that had no handrails, steps or other safety features;
> 3. Failing to implement appropriate policies and procedures that would protect working men who were forced to climb on machinery;
> 4. Failing to require that the valve in question be welded in the welding area instead of welding it while it was being machined;
> 5. Failing to properly supervise Plaintiff's supervisor who was employed by **Staffcom, Inc.;**
> 6. Failing to warn your Plaintiff of the dangers and hazards posed by ·climbing on the machinery in question;
> 7. Failing to properly instruct Plaintiff with the regard [sic] to safe procedures and manners would [sic] have enabled him to climb on the machinery without being injured.

Defendants' Motion, Exh. 7 (Compromise Settlement Agreement), at 1–2 (emphasis in the original).

Staffcom, solely in the personnel business, charged service fees exclusively for the "personnel services" provided by Staffcom. *See* Exh. 1 to Defendants' Motion (Client Service Agreement), Section VI.[10] Pipeline, on the

---

**10.** Staffcom was paid a "service fee" by Pipeline that was 3% of Pipeline's gross payroll and was adjustable only if there were statutory or regulatory changes, such as "adjustments to FICA, fed-eral and/or state unemployment taxes and workers' compensation." Defendants' Motion, Exh. 1, at ¶¶ 6.3(i), 6.5, 6.6.

other hand, never gave up control of the details of Kinnison's employment. This conclusion is supported by the language of the Client Service Agreement, which provides as follows:

> Staffcom and Client [Pipeline] will be considered co-employers ("dual or joint employer") of those persons furnished to Client by Staffcom and listed on Exhibit A for the following purposes;
>
> \*   \*   \*   \*   \*   \*
>
> g. Employer liability under workers' compensation laws;
>
> h. Implementation of policies and practices relating to the employer-employee relationship such as recruiting, interviewing, testing, selecting, orientation of, training, evaluating, replacing, supervision, disciplining and terminating employees.

See Defendants' Motion, Exh. 1, at 3. Thus, even "on paper," the parties acknowledged Pipeline's role as employer in the key day-to-day functioning of the Pipeline business.[11]

The arrangement to promote Staffcom as Kinnison's employer—to exclusion of Pipeline—is nothing more than a sham. Pipeline and Staffcom should not be permitted by this arrangement to convert a general liability policy to workers' compensation coverage.[12]

A potentially significant feature of the parties' contract was that "on paper" Kinnison's supervisors also were purportedly Staffcom employees, not Pipeline staff, at the time of the accident. In Exxon, unlike the case at bar, the injured employee was employed by a construction company (the general employer) but supervised by an employee of Exxon (the special employer) at the time of his injury. This distinction is not dispositive, however. The record is uncontroverted that Pipeline (through its owners) hired and fired all the individuals who were denominated Staffcom employees and supervisors. They set the pay for all the employees. See Plaintiff's Motion, Exh. E, at 9–10. As noted above, Kinnison, all the workers at Pipeline (including his supervisor on the day of the alleged accident and everyone from Staffcom whom he knew) was hired originally by Pipeline and worked initially as Pipeline employees. The work that they did for Pipeline remained the same while on Staffcom's payroll. There is no contention that Staffcom was in the business of repairing or otherwise working with valves, which was Pipeline's, Kinnison's, and his supervisors' work. Plaintiff's Motion, Exh. A. The only difference was that, later, after Pipeline transferred all the employees to Staffcom pursuant to the Client Service Agreement, Staffcom handled payroll and benefits for Pipeline. See Plaintiff's Motion, Exh. A, at 10, 12.

As a matter of law, therefore, Kinnison was nothing less than a dual employee of Pipeline and Staffcom.

Furthermore, analysis of the six factors which determine right of control, see Producers Chemical Co. v. McKay, 366 S.W.2d at 226, compels the conclusion that Kinnison was a borrowed servant, at least for the purpose of interpreting the insurance contract terms.[13] First, as to the nature of the general project, Pipeline is in the business of buying, selling and repairing valves for major companies, see Plaintiff's Motion, Exh. A,

---

11. But see Defendants' Motion, Exh. 1, at 4 ("Supervision Clause" of Client Service Agreement) (purporting to assign supervisory responsibilities to Staffcom employees). The Court does not consider the "Supervision Clause" dispositive in context. It is clear from the record that Pipeline's three owners worked at the facility and managed the business and thus the leased Staffcom employees. Only hourly wage work was performed by Staffcom employees formerly employed as Pipeline workers and supervisors.

12. This effort is particularly problematic if the general liability carrier did not have notice of the employees' arrangement. The record does not contain evidence on this issue, however. There-

fore, the Court does not make any assumptions or findings in this regard.

13. Defendants argue that the "borrowed employee" doctrine is not satisfied because there is no proof that Pipeline purchased workers' compensation coverage. However, the "exclusive remedy provision" of the Workers' Compensation Act in effect in 1991, when Kinnison allegedly was injured, did not require that the employer be a "subscriber." Pederson, 874 S.W.2d at 138. Therefore, the Court holds that, like the company which controlled the borrowed employee in Pederson, Pipeline carried workers' compensation insurance "through an arrangement" with a personnel leasing company, i.e., Staffcom.

while Staffcom's business is only personnel services. Second, as to the nature of the work to be performed, Kinnison worked in one of Pipeline's core areas of business; he was a machinist and worked on all Pipeline's equipment. His work after the transfer was exactly the same as when he worked as a Pipeline employee. Third, as to the "length of the special employment," Kinnison worked exclusively for Pipeline during the tenure of his employment with Staffcom. There is no contention that he ever worked anywhere other than Pipeline, while purportedly employed by Staffcom. Fourth, as to the types of machinery furnished, there is no evidence that any of the tools or equipment that Kinnison used belonged to Staffcom or were different after he began receiving checks from Staffcom. Fifth, as to "acts, representing an exercise of control," Ray and the other Pipeline owners retained authority to set pay and to hire and fire, and exercised that authority. Indeed, Ray is the person who decided to lay off Kinnison after his injury. *See generally* Plaintiff's Motion, Exhs. A, B, E and F; Defendants' Motion, Exh. 2.

Moreover, Kinnison repeatedly acknowledged that he believed that he continued to work for Pipeline. *See* Plaintiff's Motion, Exh. G (First Amended Petition in the state court action); Exh. L (Fifth Amended Petition); Exh. K (Pipeline's Answers to Kinnison's Interrogatories in the state court action, No. 7), and Exh. F (Kinnison's Sworn Statement on Dec. 16, 1991). Kinnison only changed his position in the *Sixth* Amended Petition, filed after Plaintiff Generali filed this declaratory judgment action, when Kinnison's counsel apparently realized the tactical difficulties with the former position. *See* Plaintiff's Motion, Exh. M (Sixth Amended Petition).

The result that Defendants seek also violates the spirit if not the letter of the Client Service Agreement, which provides that the "Agreement is between Staffcom and Client and creates no individual rights of Staffcom employees as against Client." Defendants' Motion, Exh. 1 at ¶ 11.5. Staffcom and Kinnison, by attempting to collect from Pipeline's general liability carrier, are attempting

to assert a right that Kinnison would not have had under state law and should not be able to achieve by collusive behavior with his former employer, Pipecom, and Staffcom.

Since Kinnison has been held to be an employee of Pipeline, the Employee Exclusion clause of the Policy applies. Therefore, Plaintiff's Motion for Summary Judgment is granted as to Kinnison's employee status, and Defendants' claim for insurance coverage from Plaintiff is denied.

### C. *Notice Provisions*

■ The Court concludes there is also another reason for denial of coverage. Plaintiff argues that Pipeline gave it extremely late notice of the Kinnison accident, and that this delay voids coverage, if it existed at all. Plaintiff points to Policy Conditions 4(a) and 4(b). *See* Plaintiff's Motion, Exh. J. Condition 4(a) requires that the insured (here, Pipeline) give "as soon as practicable" after an "occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses." *Id.* Furthermore, Condition 4(b) requires that once a claim is made or suit is brought, the insured "shall immediately forward to the [insurer] every demand, notice, summons or other process received by him or his representative." *Id.* The terms in "an insurance contract are given their ordinary and generally accepted meaning, unless the policy shows the words were meant in a technical or different sense." *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17, 22 (S.D.Tex.1995). When an insurance policy requires notification of an "occurrence" or a lawsuit "as soon as practicable" or "immediately," courts must consider the reasonableness of a delay in notification, if the facts are undisputed. *Id.* at 27.

■ Pipeline learned about the accident in early or mid November 1991, a week or so after its alleged occurrence on October 21, 1991. *See* Plaintiff's Motion, Exh. A (Ray Deposition), at 21–22.[14] Pipeline was served

---

**14.** Pipeline received notice no later than November 14, 1991, when Kinnison told the foreman

with the Kinnisons' Original Petition on January 13, 1993. *See* Exh. H of Plaintiff's Motion (reproduction of the original petition). However, Pipeline did not report the accident or the lawsuit to Plaintiff until March 22, 1993, almost 17 months after the occurrence and more than two months (68 days) after receipt of the Original Petition. *See* Exh. I to Plaintiff's Motion (Winter Affidavit, ¶ 4). By no stretch of the imagination can this notification of the accident be deemed "as soon as practicable." [15] Moreover, the delay in reporting the litigation also violated condition 4(b)'s requirement that the petition be forwarded "immediately" to the insurer. *Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Tex., Inc.*, 846 F.2d 319, 325 (5th Cir.1988); *Nan Travis Memorial Hosp. v. St. Paul Fire & Marine Ins. Co.*, 394 F.2d 112 (5th Cir. 1968); *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17, 27–29 (S.D.Tex.1995); *Klein v. Century Lloyds*, 154 Tex. 160, 275 S.W.2d 95, 97 (Tex.1955); *Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex.App.–Dallas 1988, no writ).

Defendants provide no excuse for their late notice to Plaintiff of either the accident (almost 17 months) or of the filing of the Kinnisons' law suit (68 days).

Defendants, in order to avoid the obvious effect of these omissions, first argue that Plaintiff should not be entitled to rely on its contract provisions because the notice provisions are ambiguous. This argument is without merit. These clauses are clear and not ambiguous. *See American States Ins. Co.*, 873 F.Supp. at 27. In any event, Defendants are not in a position to assert these issues on the facts presented.

Defendants next argue that there is no proof before the Court that Plaintiff is presently an eligible surplus lines carrier which (according to Defendants) is a necessary prerequisite to assertion of the late notice exemption. *See Mid–American Indem. Ins. Co. v. Judge Jack R. King*, 38 Tex.Sup.Ct.J.

1018, 1020, —— S.W.2d ——, —— [1995 WL 407388] (July 7, 1995) (an insurer is exempt from the Insurance Code's bond requirement only if it is an eligible surplus lines insurer both at the time the coverage is issued and at the time it seeks to defend against a suit). Plaintiff responded by submitting a properly authenticated certificate issued by the Texas Department of Insurance confirming Plaintiff's current standing as an eligible surplus lines insurer in Texas. *See* Plaintiff's Motion, Exh. O; Plaintiff's Reply to Defendants' Response to Plaintiff's Motion, Exh. C. Therefore, Plaintiff has established to the Court's satisfaction that it was an eligible surplus lines insurer both when the Policy was issued in November 1990 and when Plaintiff answered Defendants' counterclaim in September 1994. *Id.*

Alternatively, Defendants argue that, even if Plaintiff were found to be an eligible surplus lines insurer, the Court should read into Section 1.14 of the Texas Insurance Code the need to show prejudice before allowing a late notice defense. This contention is also rejected. The Court must enforce statutes as written. *In re Greenway*, 71 F.3d 1177, 1179 (5th Cir.1996). *See also Coleridge v. Parker*, No. H–93–3271, at 15–18, 1994 WL 907407 (S.D.Tex. Dec. 1, 1994) (Harmon, J.) (finding that surplus lines insurers are not required to show prejudice in order to assert a deficient notice defense).

Similarly, Defendants argue that Plaintiff was required to have the first page of the Policy stamped in accordance with Art. 1.14–2 § 7(a) (Vernon 1981 and Vernon Supp. 1994) and Section 15.21(b) of the Texas Administrative Code, and that the Policy at issue does not bear the stamp required by Texas law. Defendants' "Counter–Claim" [Doc. # 28], at 4. This issue was previously decided by Judge Hoyt, who found that the Board of Insurance regulation promulgated to enforce this requirement was not in effect when the Policy expired in 1991.[16] There-

---

who in turn told Ray and/or a Staffcom representative told Ray. *See supra* at 5.

**15.** While Plaintiff does not argue prejudice as a matter of law, in most instances as a practical matter, a 17 month delay in notifying a carrier of an accident would impair its ability to investigate

the incident. *See* Plaintiff's Response to Interrogatory No. 10, attached to Defendants' Motion as Exh. 6, at 6.

**16.** The 1993 version of Art. 1.14–2 § 7(a) requires that every new or renewal insurance contract, certificate, cover note or other confirma-

fore, Defendants are collaterally estopped from reurging this issue before the Court.

Defendants next argue that the requirements under Section 6(c) of Article 1.14–2 have not been satisfied and, therefore, that Plaintiff should not be able to enforce the insurance contract or rely on its notice provisions. Defendants urge that the agent for any surplus lines carrier must file an affidavit that "a diligent effort [as defined in the Texas Insurance Code] has been performed and a true and correct copy of the contract issued." Defendants' Motion, at 8. In essence, Defendants argue that an affidavit must be filed stating that no insurance of the type and amount desired by the customer is "procurable, after a diligent effort . . . from among the insurers licensed to transact and actually writing that kind and class of insurance in this state." Tex.Ins.Code Ann. art. 1.14–2, §§ 5, 6(c). Defendants claim that

tion of insurance procured and delivered as a surplus line coverage be stamped with the following language:

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Texas insurance statutes. The State Board of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and this insurer is not a member of the property and casualty insurance guaranty association created under Article 21.28–C, Insurance Code. . . .

Tex.Ins.Code Ann. Art. 1.14–2, § 7(a) (Vernon 1994). Pursuant to Art. 1.14–2, the State Board of Insurance promulgated § 15.21 of the Texas Administrative Code to enforce this requirement, which mandates that the above language be stamped conspicuously in ink or affixed upon the first page of every new or renewal insurance contract, certificate, cover note or other confirmation of insurance procured and delivered as a surplus lines coverage pursuant to Art. 1.14–2. 28 T.A.C. § 15.21 (West 1993). Defendants argue that Section 15.21 was in effect in 1988 and that, by failing to stamp the Policy with the requisite language, Plaintiff has violated Art. 1.14–2. Therefore, Defendant argues, the policy is unenforceable by Generali. See infra at 22–23. However, as Judge Kenneth Hoyt found while previously presiding over this case, this provision of Section 1521 did not become effective until March 11, 1992 and, therefore, is inapplicable to the Policy in this case, which expired in 1991. Order of Dismissal [Doc. # 58], at 4.

17. "Statutory changes that relate only to procedure or remedy usually apply immediately to pending cases." F.D.I.C. v. Belli, 981 F.2d 838,

their requests from the relevant office of the Texas Department of Insurance have revealed that no such affidavit was filed by Plaintiff's surplus lines agent in connection with the sale of the Policy to Pipeline.

The Court credits Defendants' evidence that no affidavit was filed in accordance with Section 6(c). However, this does not mean, as Defendants argue, that the Policy is therefore unenforceable by Plaintiff. While Defendants argue that the 1981 version of Section 9(b) must govern the outcome in this case, the same argument was previously rejected by Judge Hoyt, who found that the 1993 amendment to Section 9(b) applied retroactively to the Policy. Order of Dismissal [Doc. # 58], at 5–6.[17] Therefore, regardless of whether former Section 6(c) was violated by Plaintiff, Plaintiff may enforce the late notice provisions against Defendants.[18]

842 (5th Cir.1993). Both the 1981 version and the 1993 amendment to Section 9(b) address the remedies available to an insured when Article 1.14–2 is violated by an insurer. Therefore, Judge Hoyt found that the 1993 amendment applied retroactively to the Policy in this case, which expired in November 1991.

18. Because the Policy at issue was in effect from November 1990 to November 1991, Defendant argues that the 1981 version of Art. 1.14–2 is applicable to this case. In the 1981 version of Art. 1.14–2, Section 9(b) provided that "a contract of insurance placed into effect by an unauthorized insurer in violation of this Article is unenforceable by the insurer." Because the term "unauthorized insurer" includes surplus lines carriers, see Mid–American, 38 Tex.Sup. Ct.J. at 1021, under the 1981 version of Section 9(b), Plaintiff could not enforce the late notice provisions against Defendant if, in fact, it had violated Article 1.14–2. However, as Judge Hoyt noted, Subsection 9(b) was amended effective September 1, 1993, eliminating the language that precluded an insurer from enforcing an insurance policy. Therefore, even if the agent that placed Pipeline's insurance with Plaintiff violated Article 1.14–2, § 6(c), by failing to file an affidavit with the Surplus Lines Stamping Office, that other insurance was unavailable to Pipeline, Plaintiff is not precluded from enforcing the late notice provisions in the Policy against Defendants. This conclusion is also supported by equity and practicality. Defendants nowhere allege or submit proof that other insurance with materially different policy provisions was available to Pipeline in 1990–91, so as to make the omission of the affidavit anything more than a mere formality.

■ Finally, Defendants argue that Texas Board of Insurance Order No. 23080 should be applicable to Plaintiff. That Board Order requires a carrier to show prejudice before it may avoid liability pursuant to a lack of notice defense. Defendants point to the language of the Order which states that this requirement applies to "all general liability policies issued or delivered in Texas." Plaintiff has submitted the affidavit of Charles Dupertius, Assistant Director of the General Liability Division of the Texas Department of Insurance, who testified that liability policies issued by surplus lines insurers are not regulated by the Texas Department of Insurance or the State Board of Insurance, and therefore Board Order 23080 does not apply to Plaintiff's Policy. *See* Exh. Q to Plaintiff's Motion.

Defendants have submitted no controverting evidence. They have merely stated that the affidavit is not competent testimony, that it is inapplicable because it was written in response to a different case, that the affiant is stating his own opinion, and that the affiant has not been designated an expert. *See* Defendants' Response to Plaintiff's Motion, at 2.

The Court finds these arguments unpersuasive. Defendants proffer no better official than Mr. Dupertius to express an opinion on the practices of the Texas Department of Insurance. The fact that the affidavit was written for another case is not material since the matters which Mr. Dupertius addresses are the ones directly at issue here and Plaintiff is unquestionably a surplus lines carrier.[19] Since Defendants have proffered no contradictory evidence, the Court credits the affidavit and concludes that Board Order 23080 is inapplicable to surplus lines carriers. *See also Coleridge v. Parker*, No. H–93–3271, at 16 (S.D.Tex. Dec. 1, 1994) (finding that Board Order No. 23080 does not apply to policies issued by surplus lines insurers).

Citing *Mid–American Indem. Ins. Co. v. Judge Jack King*, 38 Tex.Sup.Ct.J. 1018, —— S.W.2d —— [1995 WL 407388] (July 7, 1995),

*Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex.1994), and *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex.App.— Houston [1st Dist.] 1993, *writ denied* ), Defendants argue that the Texas Supreme Court would apply Board Order No. 23080 to this case and, thus, would require a showing of prejudice before a late notice defense would be allowed. *See* Defendants' Response to Plaintiff's Motion, at 3, 6 and 11. The Court concludes that these cases deal with completely different circumstances from those at bar and, in any event, their holdings are not inconsistent with the result that the Court reaches here.

First, the *Mid–American* court considered whether an ordinary unauthorized insurer, as distinct from an eligible surplus lines carrier like Plaintiff, is exempt from an express statutory requirement of posting a bond or other security before defending against a lawsuit. *Mid–American*, 38 Tex.Sup.Ct.J. at 1018–19; Tex.Ins.Code Ann. §§ 11(a)(1), 11(d) (Vernon 1994).

While the Court shares the general concerns expressed in *Mid–American*—that consumers must be protected from undercapitalized carriers that are not subject to the same restrictions as licensed insurers—the facts and provisions in issue in *Mid–American* are distinguishable from those in the case at bar. *Mid–American* involved a claim by an injured worker, Pat Joe Teal ("Teal"),[20] who worked for Lopez–Gloria Construction Services, Inc. ("Lopez–Gloria"), a subcontractor to Williams Brothers Construction Co. ("Williams"). Mid–American, a Cayman Islands Corporation, issued a general liability policy to Lopez–Gloria prior to Teal's accident, but refused to defend either Williams or Lopez–Gloria and denied coverage altogether. *Mid–American*, 38 Tex.Sup.Ct.J. at 1019. A settlement between Teal and Williams in excess of the $600,000 policy limits was reached. Williams then sued Mid–American for a declaration that it was entitled to coverage. When the 1993 amendments to the Texas Insurance Code became effective on September 1, 1993, Mid–Ameri-

---

19. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (evidence needs to be of the type that would be admissible at trial but need not be in an admissible form).

20. Teal sustained head injuries at the job site when he was struck by a backhoe.

can sought, but was denied an exemption from the increased minimum capital and surplus requirements for surplus lines insurers. Williams successfully moved to strike Mid–American's pleadings when Mid–American failed to post the bond required by Article 1.36, § 11(a)(1), of the Texas Insurance Code. *Id.* at 1020.

The Texas Supreme Court had to determine whether an exemption to the bond requirement created in 1993 for "eligible" surplus lines carriers applied to a carrier deemed eligible at the time the applicable coverage was issued, but not at the time of suit.[21] Interpreting "the plain terms of the statute," the Court found that "an insurer is exempt from the bond requirement only if it is an eligible surplus lines insurer both at the time the coverage is issued and at the time it seeks to defend against a suit."[22] *Mid–American,* 38 Tex.Sup.Ct.J. at 1020.

The primary concern of the *Mid–American* Court was protecting Texas consumers from undercapitalized *ineligible* insurers who lack sufficient capital to satisfy claims when they are brought against the carriers. Thus, the Court stressed the distinction between eligible surplus lines insurers (which are exempt from the Insurance Code's bond requirement) and ordinary unauthorized insurers (which are not). Unlike Mid–American, however, Plaintiff Generali has been at all relevant times an eligible surplus lines insurer, *see supra* at 19–20, and has satisfied the minimum capital and surplus requirements under the Texas Insurance Code. Therefore, the policy concerns expressed in *Mid–American* are not implicated in the case at bar.

Further, there is no question that, unlike Mid–American, Plaintiff agreed to and did provide a defense to Pipeline against the Kinnisons' claims. The defense ended only when, against defense counsel's advice, Pipeline, Staffcom and the Kinnisons entered into a $1,000,000 settlement with a covenant not

to execute, and joined forces against Plaintiff Generali. *See* Defendants' Motion, Exh. 9. Nothing about these circumstances suggests any self-serving or improper motive by Plaintiff Generali[23] or a reason to bar its enforcement of contractual provisions of its Policy with Pipeline, its insured.

Like the *Mid–American* decision, *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994), is inapposite to the case at bar. In *Hernandez,* the Texas Supreme Court held that an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with [a] tortfeasor. *Hernandez,* 875 S.W.2d at 692. The insurer, Gulf Group Lloyds ("Lloyds"), argued that it had no obligation to honor a claim under a $100,000 underinsured motorist policy because, without giving notice to Lloyd's, the claimants had previously settled with the negligent driver's insurance company, State Farm Mutual Insurance Company ("State Farm"), for the limits of a $25,000 liability policy. The Court held for claimants because it found that the alleged breach of the policy, *i.e.,* failing to obtain Lloyd's consent to settle with State Farm, was not material. *Hernandez* does not control the outcome at bar. The circumstances here are entirely different; there was no lack of notice to the carrier.

Finally, Defendants' reliance on *Chiles* is unavailing. *Chiles* involved a homeowner's policy which the court stated was not shown to be a general liability policy and, thus, Board Order No. 23080 was not applicable. Defendants' citation is to a quotation in the Court of Appeal's decision from the Board Order itself and, thus, is without any probative value in the case at bar.

Therefore, Plaintiff's Motion for Summary Judgment on the ground of the late notice provision is also GRANTED.

**21.** Tex.Ins.Code Ann. art. 1.36, § 11(d) (Vernon 1994).

**22.** Mid–American was an eligible surplus lines insurer when it issued a comprehensive general liability policy to Lopez–Gloria. However, it became ineligible as a result of its noncompliance with the 1993 amendments to the Insurance

Code, which increased the minimum capital and surplus requirements for surplus lines insurers to $15,000,000.

**23.** Moreover, it appears that Kinnison successfully collected workers' compensation benefits for his accident. *See* Defendant's Motion, Exh. 1 at ¶¶ 7.1, 11.6.

## IV. CONCLUSION

Defendants have failed to raise a genuine issue of material fact as to either Kinnison's employment status or their violation of the Policy's late notice provisions. Therefore, the Court finds that Kinnison was an employee of Pipeline at the time of the accident and that Defendants failed to comply with the notice provisions in the Policy. It is therefore

ORDERED that **Plaintiff's Motion for Summary Judgment is GRANTED,** and pursuant to 28 U.S.C. § 2201, the Court concludes:

1. the Policy does not provide coverage for the claims made by Kinnison against Pipeline because Kinnison was an employee of Pipeline; therefore, the claims are excluded under the employee exclusions in the Policy;

2. the Policy does not provide coverage for the claims made by Kinnison against Pipeline because Pipeline failed to comply with the notice conditions in the Policy by failing to provide notice to Plaintiff Generali as soon as practicable; and

3. Plaintiff Generali is not obligated or liable to Pipeline or Staffcom in connection with any judgment entered in *Kinnison v. Pipeline Valve Specialties Company, Inc. and Staffcom, Inc.*, No. 93–01199 (152nd Dist.Ct., Harris County, Tex., July 28, 1994).

It is further ORDERED that

1. **Defendant's Motion for Summary Judgment is DENIED;** [24] and

2. all parties requests for attorney's fees are **DENIED.**

---

24. The Court need not decide the remaining issues raised in Plaintiff's and Defendants' Motions as they have been mooted by the granting of summary judgment on other grounds.