

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-17-00150-CV

———————————————————

IN RE: THE COMMITMENT OF MAURICE BLUITT

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. D372-S-13193-16

Before Sudderth, C.J.; Meier and Birdwell, JJ.
Opinion by Chief Justice Sudderth

**OPINION ON EN BANC RECONSIDERATION**

Appellee the State of Texas filed a motion for en banc reconsideration of our July 12, 2018 opinion and judgment. After considering the motion, we withdraw our prior opinion and substitute the following in its place. We dismiss the motion for en banc reconsideration as moot. *See, e.g.*, *Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *1 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op. on reh'g). Aside from portions added to address the State's arguments for reconsideration, our opinion otherwise remains unchanged.

While Appellant Maurice Bluitt was incarcerated in a Colorado prison, the State of Texas initiated proceedings to have him civilly committed as a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.081 (West 2017). Because we hold that Appellant had a statutory right to appear in person at the civil commitment trial, we reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

**Background**

## I. Appellant has a criminal history including sexually violent offenses.

In the late 1980s, Appellant was indicted in Texas for aggravated sexual assault of a child under the age of 14. In a plea bargain, Appellant pleaded guilty to the lesser charge of sexual assault and was placed on deferred adjudication probation for two years, which he successfully completed.

In 1996, Appellant was charged with kidnapping and sexually assaulting a woman in Colorado. In 1998, he pleaded guilty to the kidnapping charge in exchange for a four-year term of probation, which he was permitted to serve in Texas. But it was not long before he was arrested again. In 1999, Appellant was charged in Tarrant County with indecency with an eight-year-old child by contact. Appellant was convicted of the crime as charged and sentenced to 20 years' in the custody of the Texas Department of Criminal Justice (TDCJ).

In January 2016, when TDCJ released Appellant on parole, he was placed in the custody of Colorado authorities for a probation revocation proceeding in connection with his 1998 kidnapping conviction. Eight months later, while the instant case was pending, the Colorado court revoked Appellant's probation, and he was sent to a Colorado prison to serve his ten-year sentence. And so throughout the pendency of these civil commitment proceedings, Appellant has been incarcerated in Colorado.

**II. After TDCJ released Appellant to Colorado's custody, the State of Texas petitioned to civilly commit Appellant.**

Approximately two months after Appellant was placed in custody in Colorado, on March 31, 2016, the State filed a petition to civilly commit Appellant as a sexually violent predator. *See id.* But because Appellant was incarcerated in Colorado at the time, the State sought to abate the proceedings indefinitely. Appellant, through counsel, filed a response opposing the abatement. In his response, Appellant cited

the statutory requirement that a trial must be conducted in a sexually-violent-predator proceeding within 270 days after the petition is served. *See id.* § 841.061(a)(1) (West 2017). The trial court denied the motion to abate.

Prior to trial, Appellant's trial counsel struggled to effectively and regularly communicate with Appellant. The Colorado prison in which Appellant was located required a court order before it would allow any verbal communications between Appellant and his attorney. Even after such an order was obtained, the prison still hindered their ability to communicate by, for instance, requiring that calls be supervised by a guard.

Soon Appellant's ability to appear in person for the trial became a concern for both counsel and the trial court. In email correspondence with the attorneys, the trial court inquired of the State how it planned to "get [Appellant] from Colorado to Texas." An attorney for the State responded that he had been unable to find any authority to bring Appellant to Texas for the proceeding and suggested that Appellant might participate in the trial through videoconferencing instead.

Following this email correspondence, in November 2016, Appellant filed a motion to dismiss the commitment proceeding on two grounds: (1) that if the State could not bring Appellant to Texas for the trial, his "absolute right" to appear in person would be violated, and (2) the inability to effectively communicate with his attorney violated his right to effective assistance of counsel. The State responded by

4

arguing that Appellant was not entitled to appear in person at trial, and the State then formally requested that the trial court allow him to appear through videoconferencing.

The trial court denied Appellant's motion to dismiss and granted the State's request to allow his participation in trial through videoconferencing. In its order, the court required that a fax machine be available in the event "there [was] a need to send facsimile copies of any documents to [Appellant] to review during the trial" and also provided that Appellant should be afforded the opportunity to communicate with his counsel whenever necessary by telephone "or other appropriate means."

On the day of the first trial setting, January 9, 2017, Appellant appeared through videoconferencing and requested a continuance. In his request, Appellant agreed to waive his right to proceed to trial within 270 days of being served with the petition. *See id.* § 841.061(a)(1). The trial court granted the continuance and reset the trial to begin April 17, 2017. The trial court also noted on the record that the State intended to seek permission from the Colorado trial court to allow a Tarrant County official to transport Appellant to Texas for the April trial.

## III. The trial court conducted the trial without Appellant present.

The State's efforts to secure Appellant's transportation to Texas for trial ultimately proved unsuccessful, and on the morning of the first day of trial, Appellant refused to appear by videoconferencing. Appellant's trial counsel articulated that Appellant objected to appearing by video and to the trial being conducted in his absence. The trial court denied Appellant's objection after noting on the record that a

live video connection with the Colorado prison had been arranged. The trial court continued to deny repeated objections raised by Appellant's trial counsel throughout the proceeding regarding his client's physical absence from trial.

At the end of the trial, the jury found that Appellant was a sexually violent predator, and the trial court entered a final judgment civilly committing him. This appeal followed.

## Discussion

Appellant's two issues on appeal relate to the effects of his imprisonment in Colorado on his ability to participate in the civil commitment proceedings and to effectively communicate with his attorney. In his first issue, Appellant argues that the trial court violated his statutory and constitutional rights by conducting the trial without him being physically present. In his second issue, Appellant argues that he was effectively denied his right to the assistance of counsel throughout the proceedings. Because we find that the statute governing sexually-violent-predator civil commitments guarantees the right to appear in person at trial, we sustain that part of Appellant's first issue and do not reach his second issue. *See* Tex. R. App. P. 47.1.

## I. How to civilly commit a sexually violent predator

In 1999, the Texas Legislature first recognized the existence of "a small but extremely dangerous group of sexually violent predators" with behavioral abnormalities that are not amenable to traditional mental illness treatment modalities

6

and that make them likely to engage in repeated predatory acts of sexual violence. Tex. Health & Safety Code Ann. § 841.001 (West 2017). Accordingly, the legislature enacted chapter 841 of the health and safety code to provide a mechanism for the civil commitment of sexually violent predators.

## A. Notice to TDCJ and an assessment of the person

Pursuant to chapter 841, within two years of an inmate's anticipated release date, TDCJ is required to notify a multidisciplinary team of the anticipated release of any person serving a sentence for a sexually violent offense. Tex. Health & Safety Code Ann. § 841.021 (West 2017). The team, composed of individuals from various state agencies, including a mental health professional, a licensed sex offender treatment provider, and a licensed peace officer, then conducts a two-part assessment of the inmate. *Id.* § 841.022 (West 2017).

First, the team assesses whether the person is a repeat sexually violent offender and whether he is likely to commit a sexually violent offense after release. *Id.* § 841.022(c)(1). The team then notifies TDCJ of its assessment and, if appropriate, recommends the assessment of the person for a behavioral abnormality. *Id.* § 841.022(c)(2). If the team recommends a behavioral-abnormality assessment, the second part of the assessment takes place.

Within 60 days of that recommendation, TDCJ must consult an expert to ascertain if the person suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.023(a) (West 2017). Based

7

upon the expert's opinion, if TDCJ determines that he does suffer from a behavioral abnormality, TDCJ must give notice to the attorney representing the state for the county in which the person was most recently convicted of a sexually violent offense. *Id.* § 841.023(b).

## B.  The civil commitment proceeding

After receiving TDCJ's notice, the state's attorney has 90 days to file a petition for civil commitment.  *Id.* § 841.041(b)(1) (West 2017).  Once filed, the trial court is required to conduct a trial within 270 days.  *Id.* § 841.061(a) (West 2017).

The statute expressly grants the person certain rights during the proceeding, including "the right to appear at the trial," the right to a jury trial, and the right to the effective assistance of counsel.  *Id.* § 841.061(b), (d), § 841.144 (West 2017).  And if a jury trial is conducted, "[t]he number and selection of jurors" are governed by chapter 33 of the code of criminal procedure.  *Id.* § 841.146(a) (West 2017).  Chapter 33 includes a provision that a defendant "*must* be personally present at the trial" except in trials of misdemeanors that do not risk a jail sentence. Tex. Code Crim. Proc. Ann. art. 33.03 (West 2006) (emphasis added).

To receive a civil commitment order, the State must show beyond a reasonable doubt that the person (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.  Tex. Health & Safety Code Ann. § 841.003 (West 2017) (defining "sexually

8

violent predator"), § 841.062(a) (West 2017) (imposing a "beyond a reasonable doubt" burden of proof). The jury's verdict must be unanimous. *Id.* § 841.062(b).

### C. The terms of civil commitment

If the factfinder determines that the person is a sexually violent predator, the trial court must enter a civil commitment order. *Id.* § 841.081(a) (West 2017). But before entering the order, the trial court may impose certain requirements, including requirements that the person reside where instructed by the Texas Civil Commitment Office (TCCO), that the person participate in and comply with a sex-offender treatment program, and that the person submit to tracking and any other appropriate supervision. *Id.* § 841.082 (West Supp. 2017). Once the civil commitment order is entered, it is immediately effective, and treatment and supervision will begin once the person is released from a secure correctional facility. *Id.* § 841.081.

When the person is released from TDCJ's custody, TCCO is responsible for providing the appropriate and necessary supervision and treatment. *Id.* § 841.007 (West 2017). TCCO accomplishes this through a tiered program that provides the opportunity for the person to transition from a total-confinement facility, to less restrictive housing and supervision, and then to an eventual release from commitment, depending on the person's behavior and treatment. *Id.* § 841.0831 (West 2017). TCCO is required to transfer the person to less restrictive housing and supervision if doing so is in the best interest of the person and conditions can be imposed to adequately protect the community. *Id.* § 841.0834 (West Supp. 2017). But

9

TCCO may also transfer the person back to a more restrictive tier if it later determines that such a transfer is necessary for further treatment and to protect the community. *Id.*

### D. Review of commitment

Any order of civil commitment must be periodically reviewed. If a civilly-committed person does not petition for his release sooner, the statute requires a "biennial" examination. *Id.* §§ 841.101–.102, .121 (West 2017). As it is instructive in this case, we will address the biennial review process.

In this process, the trial court judge reviews an updated report prepared by an expert regarding the committed person's status. *Id.* § 841.102. The statute expressly provides that the committed person is *not* entitled to be present at the review, although he is entitled to be represented through counsel. *Id.* § 841.102(b).

After reviewing the expert's report, the trial court may either issue an order concluding the review or set a hearing for the purpose of determining whether the terms of commitment should be modified or whether probable cause exists to believe that the person's behavioral abnormality has changed to the extent that he is no longer likely to engage in a predatory act of sexual violence. *Id.* § 841.102. If the trial court sets a hearing to determine whether probable cause exists, this essentially becomes a de novo proceeding. *Id.* § 841.103(c) (West 2017). The committed person is entitled to "all constitutional protections" he enjoyed in the first proceeding. *Id.* Either side can request a jury, and the State must once again meet its burden beyond a

reasonable doubt. *Id.* And—most significant to this case—the statute expressly provides that the committed person is entitled to "be present" at the biennial review probable cause hearing. *Id.*

## II. Chapter 841 guarantees the right to physically appear at trial.

Because liberty issues with serious constitutional implications are present during these proceedings, chapter 841 affords many protections similar to criminal trials. *See Kansas v. Hendricks*, 521 U.S. 346, 364, 117 S. Ct. 2072, 2083 (1997) (acknowledging the use of some traditionally criminal procedural safeguards in state civil commitments). One of the enumerated statutory rights—the meaning of which is the central issue in this case—is "the right to appear at the trial." This right is found in section 841.061, entitled "Trial," which provides, in pertinent part:

> (b) The person or the state is entitled to a jury trial on demand. A demand for a jury trial must be filed in writing not later than the 10th day before the date the trial is scheduled to begin.
>
> (c) The person and the state are each entitled to an immediate examination of the person by an expert. All components of the examination must be completed not later than the 90th day before the date the trial begins.
>
> (d) Additional rights of the person at the trial include the following:
>
> **(1) the right to appear at the trial;**
>
> (2) except as provided by Subsection (f), the right to present evidence on the person's behalf;
>
> (3) the right to cross-examine a witness who testifies against the person; and

11

> (4)   the right to view and copy all petitions and reports in the court file.

Tex. Health & Safety Code Ann. § 841.061(b)–(d) (emphasis added).  On appeal, the State argues that subsection (1) entitles the person to appear through counsel but not to be physically present at trial.  Appellant argues that the statute's guarantee of a "right to appear at the trial" means that the person is entitled to be physically present. We agree with Appellant.

Our primary objective in statutory construction is to give effect to the legislature's intent.  *Chesser v. LifeCare Mgmt. Servs., LLC*, 356 S.W.3d 613, 619 (Tex. App.—Fort Worth 2011, pet. denied) (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)).  First and foremost, we look to the words of the statute.  *Id.* at 619–20 (citing *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006)).  We construe the statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results.  *Id.* at 620 (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

To support its position, the State points out that section 841.061(d) uses the phrase "right to appear" rather than "right to be present."  The State then directs our attention to section 841.103(c), involving the biennial review process, where the

statute provides that the person "is entitled to *be present*" at the probable cause hearing. *See* Tex. Health & Safety Code Ann. § 841.103(c) (emphasis added).[1]  Thus, the State argues, the plain language of the statute demonstrates that the legislature chose to afford the person only a right *to appear* at the initial commitment hearing but to afford the person the right *to be present* at any subsequent probable cause hearing.

But such a reading would lead to an absurd result.  *See Chesser*, 356 S.W.3d at 620.  It would afford a person greater rights two years after his liberty has been taken than he would be entitled to when his liberty is first placed at risk.

Appellant points out another absurdity.  The State's interpretation ignores section 841.146, which directly incorporates code of criminal procedure chapter 33's provisions regarding a criminal defendant's right to be present at voir dire.  Tex. Health & Safety Code Ann. § 841.146 (providing that if a jury trial is conducted in a sexually-violent-predator civil commitment proceeding, "the number and selection of jurors" is governed by chapter 33 of the code of criminal procedure).  The court of criminal appeals has interpreted article 33.03 as granting an unwaivable right to be present during voir dire.  *Miller v. State*, 692 S.W.2d 88, 91–93 (Tex. Crim. App. 1985) (construing article 33.03's allowance for the trial court to proceed with trial "after the jury has been selected" in the event the defendant voluntarily absents himself from the trial).  And we agree with our sister court that the incorporation of chapter 33 into

---

[1]Yet another section expressly provides that at the biennial review, the person "is not entitled to be present."  *See* Tex. Health & Safety Code Ann. § 841.102(b).

chapter 841 means that a person facing civil commitment under chapter 841 is entitled to be physically present during voir dire. *See In re Commitment of Young*, 410 S.W.3d 542, 553 (Tex. App.—Beaumont 2013, no pet.). Again, it seems absurd that the legislature would, on the one hand, provide a person with the right to be physically present during voir dire, but on the other hand, deny the person the right to be physically present during the trial itself.

The State points to an additional provision in chapter 841 to contend that videoconferencing meets the requirements of this statute. Section 841.152(a) provides that a person's right "to be present" at the probable cause hearing during the biennial review can be met through closed-circuit video teleconferencing. Tex. Health & Safety Code Ann. § 841.152(a) (West Supp. 2017). This argument actually provides support to the contrary. The legislature, fully aware of videoconferencing technology, chose to allow it specifically in the context of the biennial review, but did not make a similar provision in the context of the initial commitment hearing. We decline the State's invitation to read an entire provision into the initial civil commitment trial process that is not present. *See In re Ford Motor Co.*, 442 S.W.3d 265, 287 (Tex. 2014) (orig. proceeding) (applying the well-established presumption that the legislature "omitted words it intended to omit"); *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex.) (declining to "add" language to a statute because the legislature had demonstrated elsewhere that it "clearly knew" how to use such language), *cert. denied*, 530 U.S. 1244 (2000).

The State also urges us to apply the general precedent of civil caselaw holding that an inmate does not have an automatic right to appear personally in court. *See, e.g.*, *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003). Alternatively, the State suggests that Appellant "appeared" for purposes of the statute by filing an answer or any other pleadings. Not only does this argument ignore the statutory language that Appellant had the right to appear *at the trial*, the state's argument makes little sense in the context of this type of civil proceeding. Although civil in nature, a civil commitment proceeding is a far cry from the traditional civil lawsuit. The State's argument ignores the significant difference between a civil commitment proceeding where personal liberty is at stake and a general civil case which seeks only monetary or other compensation. *See, e.g.*, *Ringer v. Kimball*, 274 S.W.3d 865, 868 (Tex. App.—Fort Worth 2008, no pet.) (holding that inmate did not have a right to appear in person to prosecute contract claim against his former attorneys); *In re R.C.R.*, 230 S.W.3d 423, 426–27 (Tex. App.—Fort Worth 2007, no pet.) (holding that pro se inmate must be given alternative means to appear in civil action pertaining to lien and levy against inmate's bank account). Under this statutory scheme, there is no method by which Appellant could have forfeited his right to a trial by failing to appear or file an answer.

In its motion for en banc reconsideration, the State conflates sexually-violent-predator civil commitments with mental-health civil commitments. Despite the complete absence of any evidence that Appellant lacked the capacity to attend his own trial, the State argues that sex offenders should not have the right to be

15

personally present at their initial civil commitment trial because they have not been treated yet, stating, "These are not necessarily people that can sit through a jury trial without being physically or mentally harmed," and that they can be present at a biennial review hearing because, by then, they have "received years of treatment."[2] We recognize that mental-health commitments and sexually-violent-predator commitments are in some ways analogous, but we disagree with the State's implication that they are the same.

Mental-health commitments are appropriate where an individual suffers from a mental illness and, as a result, (1) is likely to cause serious harm to himself or others, or (2) is suffering from "severe and abnormal mental, emotional, or physical distress"; is experiencing "substantial mental or physical deterioration" of the individual's "ability to function independently, which is exhibited by the proposed patient's inability . . . to provide for the proposed patient's basic needs, including food, clothing, health, or safety"; and is unable to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety Code Ann. § 574.034(a) (West Supp. 2017), .035(a) (West 2017). The provision for the mental-health commitment of an individual suffering from a mental illness that renders him a risk of serious harm toward himself or others is similar to the commitment of a

---

[2]The State argued that, by the time of a court-ordered biennial review hearing, "the person has received years of treatment and a professional has found that he no longer has a behavioral abnormality that endangers society. Now the person is entitled to be present."

sexually violent predator—an individual whose behavioral abnormality renders them prone to engaging in repeated predatory acts of sexual violence. But the State's argument for reconsideration asks us to assume that all accused sexually violent predators are mentally ill to the extent that they are suffering from "severe and abnormal mental, emotional, or physical distress," or are unable to function independently or make rational and informed decisions regarding their treatment options. In fact, such an assumption would ignore a key difference between sexually-violent-predator commitments and mental-health commitments: a person can only be deemed a sexually violent predator if he has been criminally convicted of at least one sexually violent offense. *Id.* § 841.003. To be convicted of a sexually violent offense, the person was presumed mentally competent and has already participated in a trial without the benefit of treatment. *See* Tex. Code Crim. Proc. Ann. art. 46B.003 (West 2018) (providing that a person is incompetent to stand trial if he lacks the ability to consult with his lawyer or lacks a rational and factual understanding of the proceedings against him); *cf. id.* art. 46C.155 (West 2018) (providing that a defendant found not guilty by reason of insanity is considered to be acquitted). The State's argument ignores this important difference between mental-health commitments and sexually-violent-predator commitments and asks us to presume that the person, while competent to stand trial in the underlying criminal proceeding, subsequently became incompetent during his stay in prison.[3] We decline to do so.

---

[3]This is not to say that a potential sexually violent predator could not also be

In addition, at oral argument in this case, the State asserted that Appellant waived any right to be physically present at his commitment trial by committing a crime in the state of Colorado which resulted in his removal to Colorado by TDCJ. The State did not provide briefing or otherwise provide support for this proposition and we can find nothing in the law in general or chapter 841 in particular that supports this theory of waiver. We reject this argument.

For these reasons, we hold that the legislature guaranteed the right to be physically present at trial to persons facing civil commitments as sexually violent predators. Because the trial court proceeded to trial without affording Appellant his right to be physically present, we hold that the trial court erred and we sustain Appellant's first issue.[4]

## III. Appellant's absence from the trial caused him harm.

Having found error, we must determine whether the error probably caused rendition of an improper judgment or probably prevented Appellant from properly

deemed mentally ill such that a mental-health commitment is warranted simply because the sexually violent predator was deemed competent to stand trial and be convicted of a sexual offense. But there is no support for the State's proposition that all sexually violent predators should be so presumed and therefore not entitled to attend their civil commitment trial.

[4]Because we hold that the right to be physically present at trial is statutorily guaranteed, we do not reach Appellant's constitutional arguments. *See* Tex. R. App. P. 47.1. We do however note our concern that proceeding to trial without the person's physical presence could present constitutional concerns. *Cf. Hendricks*, 521 U.S. at 356–60, 117 S. Ct. 2079–81 (evaluating Kansas's civil commitment statutory scheme in light of substantive due process concerns).

18

presenting the case to this court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005). Based on the record before us, it seems clear that Appellant's absence caused him harm.

At the outset, the trial court highlighted Appellant's absence, leaving the false impression that Appellant's failure to appear by video at trial was simply a matter of Appellant's indifference to participation. At the beginning of voir dire, the trial court instructed the jury as follows:

> Mr. Bluitt is not present in court today. Mr. Bluitt is in Colorado. We had made arrangements for Mr. Bluitt to appear by video conferencing where he would be able to see you and you would be able to see him and he would be able to hear what anyone was saying. *However, Mr. Bluitt has chosen not to participate by video conferencing. And that is his choice.*

[Emphasis added.]

We first note our concern with the trial court's statement. After commenting to the jury that Appellant had "chosen not to participate," the trial court refused to allow Appellant's counsel to explain to the jury the reason that Appellant had made such a "choice," i.e., that Appellant insisted upon his right to appear in person. Because the trial court's comment did nothing to explain the circumstances surrounding Appellant's "choice," it left open the negative inference that Appellant did not appear simply because he did not care. Had the jury made such an inference without the trial court's assistance is one thing, but it is quite another for the trial court to comment on Appellant's exercise of a right in such a way that encourages a negative impression for the jury. This is why the law does not permit commentary on

19

the defendant's decision not to testify or his exercise of a privilege claim in a criminal proceeding. *See* Tex. R. Evid. 513 (prohibiting the court or counsel from commenting upon a privilege claim); *Griffin v. California*, 380 U.S. 609, 614–15 (1965) ("What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."). Here, the trial court could have avoided the potential of creating a false impression with the jury by saying nothing at all, especially since the jury later heard evidence of Appellant's incarceration in Colorado which was the primary stumbling block in securing his presence at trial.

The residual effect of the trial court's comment is quite apparent in the record when reviewing the statements made by the venire panel throughout the remainder of voir dire regarding Appellant's absence from trial. Several members of the venire panel voiced concern—even irritation—that Appellant was not present. Twelve indicated outright that they would feel so strongly about Appellant's absence that they could not be fair to him. For example:

- "I feel that first of all, he is not even here today. You know, I had changed my plans to be here today. It just has a bad feeling already that I'm pretty sure that I would not be fair and impartial."

- "[T]he idea that he is not here even sort of makes me think already that the guy is guilty."

- "Yeah, there's no way [I could be a fair juror] already in my mind."

20

- "Is he incarcerated? Is he hospitalized now?" When the prosecutor asked how his being incarcerated could affect her view, she admitted, "I would be biased, let's just say that, biased towards his guilty [sic]."

- When asked if he could consider Appellant's testimony offered through a taped deposition the same as he would live testimony, another venireperson admitted that he "would view a deposition as a lower form of evidence than were he here in person" and felt it "would make him less credible." Two other veniremembers agreed with him.

- "I'm struggling with such a serious matter, trying not to read into the fact that the Defendant is not taking the time or able to take the time to represent - - to be part of it. I - - I just struggle with that a little bit. I'll be honest."

- "If he's being accused of something, I want to be up front, I want to be here I want people to see me, you know. And I understand that assuming you just said he is probably still in prison, but he can be handcuffed and flown out here, I guess, and that would make a difference for me."

While some, if not all, of these veniremembers were stricken, these statements—made within the hearing of the entire venire panel—provide insight into how the trial court's instruction and Appellant's absence were viewed by potential jurors in the case. When the trial court refused to allow Appellant's trial counsel to explain that Appellant wanted to attend but attempts to have him transported back to Texas for trial had failed, the likelihood for a distinctly false impression to be formed in the jurors' minds was further compounded.

Additionally, the State's sole live witness relied upon and highlighted Appellant's demeanor, the very factor that the jury was deprived of evaluating for themselves. While Appellant's videotaped deposition was played for the jury,

21

Dr. Darrel Turner, a clinical psychologist, appeared live, and in his testimony regarding his evaluation of Appellant, Dr. Turner emphasized Appellant's demeanor as it appeared to Dr. Turner during his three-hour interview of Appellant and during the videotaped deposition. Dr. Turner testified that Appellant's demeanor was "markedly different" during the interview from his demeanor as reflected in the recorded deposition. He expanded, saying that when he met with Appellant, Appellant looked "physically different," and "much more . . . cocky, much less subdued." He described his surprise upon receiving and reviewing the video of the deposition because "it really did look like a different person . . . that I had spoken with who was very, very, very sure of himself and very cocky." He opined that Appellant appeared in the deposition video to be "making an effort to present himself as a bit more meek than he was . . . when [Dr. Turner] met with him." Dr. Turner noted that this difference was diagnostically significant in determining that Appellant had antisocial personality disorder.

The State further emphasized Appellant's demeanor in its closing argument. Although it initially cautioned the jury, "It doesn't matter that he's in Colorado. It's completely irrelevant to whether or not he has a behavior abnormality," the State went on to argue that the jury was able to observe Appellant's demeanor in his video deposition, even noting that that may have been the only thing that was "helpful" about watching the deposition.

With such stress placed on his demeanor, Appellant was placed at a severe disadvantage by being precluded from attending the trial in person and allowing the jurors to judge his demeanor for themselves. It is axiomatic that a key role of the jury is to judge the demeanor of the witnesses and the parties before it. *See, e.g.*, *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (noting the "familiar principle that the jury is the sole judge of the credibility of witnesses").[5]

Having found harmful error, we reverse the trial court's judgment.

## IV. We remand for proceedings consistent with this opinion.

Chapter 841 requires that the civil commitment trial take place within 270 days after the petition is filed, *see* Tex. Health & Safety Code Ann. § 841.061(a), but it also allows the trial court to continue the trial "if the person is not substantially prejudiced by the continuance and . . . on the request of either party and a showing of good cause . . . or on the judge's own motion in the due administration of justice," *id.* § 841.063(a) (West 2017). At the first trial setting, Appellant agreed to waive the 270-day requirement. We remand these proceedings to the trial court to determine the extent

---

[5]Furthermore, even if Appellant had availed himself of the videoconferencing option offered, we are not convinced that Appellant would have had adequate ability to communicate with his counsel during the proceedings. We acknowledge that the trial court stated that it would allow Appellant to communicate with his counsel by phone, videoconference, or facsimile, whenever requested. But it is unclear how Appellant could have both privately and contemporaneously communicated with his attorney under such circumstances, leaving some doubt as to the efficacy of videoconferencing in affording Appellant the ability to assist in his own defense.

23

of that waiver, *see* Tex. R. App. P. 43.2(d), or if a continuance should be granted on any other grounds.

## Conclusion

Having determined that Appellant was entitled to appear in person at the civil commitment trial, we reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion. *See id.*

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: September 27, 2018